## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| v. | Case No. 1:21-cv-02575-JPB |
| THE STATE OF GEORGIA; THE GEORGIA STATE BOARD; and BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, | |
| *Defendants,* | |
| PUBLIC INTEREST LEGAL FOUNDATION, | |
| *Proposed Intervenor-Defendant.* | |

## [PROPOSED] INTERVENOR-DEFENDANT
## PUBLIC INTEREST LEGAL FOUNDATION'S [PROPOSED] ANSWER

Proposed Defendant-Intervenor the Public Interest Legal Foundation ("Foundation"), by and through counsel, and without waiving any motions or defenses, hereby answers Plaintiff's Complaint. (Doc. 1.)

Many of the paragraphs in the complaint state conclusions of law, to which no response is required. Many others make factual allegations that are outside the scope of the Foundation's knowledge; as a result, they can neither be admitted nor

1

denied by Intervenor and thus are deemed denied. Any other allegations not admitted are deemed denied.

1.     The Foundation admits that the Georgia legislature enacted a bill known as Georgia Senate Bill 202 in 2021. The bill speaks for itself. The Foundation denies the Plaintiff's characterizations of the entire "backdrop" of the bill and challenges the relevancy of such evidence in light of Supreme Court precedent.

2.     The Foundation denies the Plaintiff's characterizations of the bill. The Foundation denies the Plaintiff's accusations regarding the intent of the Georgia legislature.  Plaintiff's complaint fails to identify even one instance of recent intentional discrimination in voting by members of the Georgia Legislature and also mischaracterizes the operative effect of the challenged provisions.

3.     Admitted.

4.     To the extent that the Plaintiff seeks to assert that the Voting Rights Act invalidates this Georgia law, such application would be unconstitutional in this circumstance, as alleged more particularly below. Moreover, the changes to Georgia's election law were not "significant" but rather modest and incremental.

5.     Denied.

6.     Admitted.

7.     Admitted.

2

8.     Admitted.

9.     Admitted.

10.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent this paragraph states a legal conclusion, no response is required. Other than as admitted, the allegations contained in paragraph 10 are denied.

11.     Admitted.

12.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent this paragraph states a legal conclusion, no response is required. Other than as admitted, the allegations contained in paragraph 12 are denied.

13.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 13 are denied.

14.     To the extent this paragraph states factual allegations, Intervenor challenges the use of 2019 American Community Survey 1-year estimates as

having sufficient weight or presumptions of validity to merit reliance and therefore denies to the extent the allegation purports to plead facts.

15.     To the extent this paragraph states factual allegations, Intervenor challenges the use of 2019 American Community Survey 1-year estimates as having sufficient weight or presumptions of validity, unlike the 2010 or 2020 decennial census, to merit reliance and therefore denies to the extent the allegation purports to plead facts.

16.     To the extent this paragraph states factual allegations, Intervenor challenges the use of 2019 American Community Survey 1-year estimates as having sufficient weight or presumptions of validity, unlike the 2010 or 2020 decennial census, to merit reliance and therefore denies to the extent the allegation purports to plead facts.

17.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 17 are denied.

18.     To the extent this paragraph states factual allegations, Intervenor lacks access to the information alleged. Intervenors deny.

19.     Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations

contained in paragraph 19 are denied.  Moreover, any disparity in turnout between White and Black voters is irrelevant to an intentional Section 2 claim.

20.     Denied. To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Moreover, the share of the White electorate is immaterial to the intentional allegations alleged by the Plaintiff.

21.     Denied. Intervenor contends this allegation lacks any reference upon which it is based. Moreover, Intervenor notes that if Plaintiff's allegations are true and there was an increase in Black voters casting absentee ballots, that increase predated Georgia's temporary use of drop boxes for the 2020 election cycles, and that Georgia's pre -Covid election procedures provided Black voters an "equal opportunity to participate in the electoral process", through many several methods of absentee voting. *Brnovich v. Democratic Nat'l Comm*., Nos. 19-1257, 19-1258, 2021 U.S. LEXIS 3568, at *17. (July 1, 2021).

22.     Denied.  To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations.  Intervenor notes that, if true, the increase in the use of absentee voting in 2020 and 2021 were due to health concerns alone caused by the COVID pandemic.

5

23.     The allegations contained in paragraph 23 are denied. Any allegations of official discrimination must relate to voting. Disparities in income alone are not relevant to allegations of discriminatory intent under a Section 2 inquiry. Moreover, data in the United States Census American Community Survey regarding income and wealth are not entitled to any presumption of validity enjoyed by the Decennial Census.

24.     The allegations contained in paragraph 24 are denied.  Plaintiff's allegations of any official discrimination must relate to voting. Disparities in poverty levels alone, without any connection to the mechanics of voting, are not relevant to allegations of discriminatory intent under a Section 2 inquiry. Plaintiff's reliance on data from the United States Census American Community Survey regarding income and wealth are not entitled to any presumption of validity enjoyed by the Decennial Census.

25.     The allegations contained in paragraph 25 are denied. Any allegations of official discrimination must relate to voting. Disparities in employment alone are not relevant to allegations of discriminatory intent under a Section 2 inquiry.

26.     The allegations contained in paragraph 26 are denied. Any allegations of official discrimination must relate to voting. Disparities in educational levels alone are not relevant to allegations of discriminatory intent under a Section 2 inquiry.  Again, Plaintiff's reliance on from the American Community Survey

6

regarding income and wealth are not entitled to any presumption of validity enjoyed by the Decennial Census.

27.    Denied. Any allegations of official discrimination must relate to voting. Any disparity in the rate of residence changes alone is not relevant to allegations of discriminatory intent under a Section 2 inquiry. Data from the American Community Survey regarding residence mobility is not entitled to any presumption of validity enjoyed by the Decennial Census.

28.    Denied. Any allegations of official discrimination must relate to voting. Disparities in internet access alone are not relevant to allegations of discriminatory intent under Section 2. Plaintiff alleges a massive increase in absentee voting by Black voters in the 2020 election, yet applications for absentee ballots were also made through an online system. Compl. at 11.  Moreover, data in the United States Census American Community Survey regarding internet access are not entitled to any presumption of validity enjoyed by the Decennial Census.

29.    Denied. Any allegations of official discrimination must relate to voting. Disparities in vehicle ownership alone are not relevant to allegations of discriminatory intent under Section 2. Plaintiff also alleges that the majority of Black Georgians live within several counties which are best described as urban, which provide ample methods of public transportation to residents. Moreover, data

in the United States Census American Community Survey regarding car ownership are not entitled to any presumption of validity enjoyed by the Decennial Census.

30.    Denied. Despite Plaintiff's allegations of rampant discrimination, the Plaintiff has never brought a Section 2 intentional discrimination in voting complaint against the State of Georgia prior to the instant lawsuit. Moreover, only a history of recent official discrimination is relevant to a Section 2 intent claim. Any use of evidence of official discrimination that does not touch on current circumstances or recent history would apply Section 2 in an unconstitutional manner by ascribing bad acts in the distant past to people and institutions in the present completely removed from past bad acts.

31.    Admit, that Georgia was subject to the preclearance requirements of Section 5 of the Voting Rights Act and remained subject to Section 5 until 2013. Intervenor denies any characterization included in allegations in paragraph 31.

32.    Admitted.

33.    Intervenor acknowledges that the Attorney General has issued objections to changes in voting submitted for preclearance by the State of Georgia and numerous subdivisions within its boundaries. To the extent this paragraph states an exact number of Objections Intervenor lacks specific information sufficient to form a basis as to the truth of these allegations.  However, an Objection issued after review of electoral changes submitted for preclearance

under Section 5, does not require a showing of intentional discrimination.

Plaintiff reaches back to the archives of 1968 to swell the numbers of objections

interposed to changes submitted by the numerous jurisdictions within the State of

Georgia. Under the Voting Rights Act, the alleged discrimination must be real and

relevant to contemporaneous life.  Any official discrimination must relate to voting

and cannot be so ancient that it has no echoes in modern life. Moreover, the

statistics pled fail to differentiate the number of Objections that were interposed

against the actual State as opposed to its sub-jurisdictions. A relevant inquiry under

Section 2 is limited to only contemporary acts of discrimination in voting.

According to information Intervenor received from Plaintiff pursuant to a Freedom

of Information Request, there were only two Objections within the entire State of

Georgia since 2000. One objection involved Local legislation that pertained to and

affected one area in the State of Georgia. The second involved the State of

Georgia's administrative procedures related to a list maintenance program

implemented to comply with the Help America Vote Act (HAVA).  There was no

finding of purposeful discrimination. (Objection letter dated May 2009. attached as

EXH A.)

     In *Shelby County v. Holder*, the Supreme Court explained that the Voting

Rights Act's encroachment on the States' constitutional authority to regulate

elections cannot be based on "decades-old data and eradicated practices," but can

be justified only by "current needs" to prevent discrimination. *Shelby County v. Holder*, 133 S. Ct. 2612, 2627 (2013). Similarly, exercising federal judicial oversight of state election procedures based on discrimination that is not currently occurring goes far beyond the constitutional limits of what constitutes an acceptable basis for the exercise of federal power.  The "extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process" is deemed relevant. Quoting S. Rep. No. 97-417, at 206-07.  Plaintiff's lack of any evidence of a recent history of discrimination that satisfies the Senate Report.

34.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent this paragraph states a legal conclusion, no response is required. Other than as admitted, the allegations contained in paragraph 34 are denied.  Plaintiff again relies upon decades old litigation. Plaintiff fails to identify the organizations who brought these actions. Despite possessing enforcement authority of the Voting Rights Act, Plaintiff did not bring any prior Section 2 lawsuit for intentional discrimination against the State of Georgia.

35. The bill speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations and contends that the characterizations include exaggerations and hyperbole.

36. Intervenor denies the characterization of the Secretary of State's decision regarding the mailing of absentee ballots for the 2020 primary. To the extent the Secretary of State engaged in conduct not based on Georgia statute and in response to efforts of plaintiffs in other matters to extract actions from the Secretary, those facts are relevant to whether the Defendants will adequately defend the challenge statutes in this case.

37. To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent that the casting of absentee ballots reached record rates, the reason was a simple one: a pandemic.  The same pandemic is now abating and voting patterns in 2020 have little if any relevance in elections after 2020. Other than as admitted, the allegations contained in paragraph 37 are denied.

38. Admitted.

39. To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 39 are denied.

11

40.     Georgia law speaks for itself. As pled, Georgia law resembles the laws in a large number of other states, over which the Plaintiff has not brough a lawsuit.  Intervenor denies any characterizations contained in Plaintiff's allegations.

41.     Admitted.

42.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations.

43.     To the extent that this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Admitted to the extent Georgia law prohibits private parties and activist organizations from engaging in ministerial functions and the administration of the distribution of absentee ballots.

44.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent the allegations are accurate, the complaints of various activist groups are irrelevant to a claim under Section 2 of the Voting Rights Act, particularly when the activist groups are not parties in the instant case. Other than as admitted, the allegations contained in paragraph 44 are denied.

45.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations. Moreover, the Plaintiff precleared the statute

12

cited by the Plaintiff as having no discriminatory effect or purpose under the
Voting Rights Act.

46.    Georgia law speaks for itself. Intervenor denies any characterizations
contained in Plaintiff's allegations. Moreover, while a signature verification
procedure may have occurred, it lacked reliability and certainty, especially as
compared to the procedures challenged by Plaintiff.

47.    Georgia law speaks for itself. Intervenor denies any characterizations
contained in Plaintiff's allegations.

48.    Georgia law speaks for itself. Plaintiff's allegations contained in
paragraph 48 highlight that the identification information required in 2020 to
request an absentee ballot was more limited than that required in SB 202. Senate
Bill 202 allows for other forms of identification including a utility bill.  To the
extent the description is accurate, it describes a small and insignificant burden on a
registrant to cast an absentee ballot as compared to the legitimate state interest in
ensuring that the voter has not had his or her vote appropriated by a third party.

49.    Georgia law speaks for itself. Intervenor denies any characterizations
contained in Plaintiff's allegations. To the extent the description is accurate, it
describes a ridiculously small and insignificant burden on a registrant to cast an
absentee ballot – namely to write down a DDS issued number the voter possesses,
the last four digits of their social security number if they do not possess a DDS

13

issued number, and finally one of a variety of other identifications such as a copy of a utility bill – something else the voter would possess.   As compared to the legitimate state interest in ensuring that the voter has not had his or her vote appropriated by a third party, this ridiculously small and insignificant burden prevents absolutely nobody from casting an absentee ballot.  Plaintiff is unable to produce a single individual who is unable to either write down (or have written down) their DDS issued number, the last four digits of their social security number or the copy of all of the other available forms of identification such as a utility bill.

50.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations.

51.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 51 are denied. Furthermore, the legislative history of previously considered bills has no bearing on the question of whether the Georgia Legislature acted with discriminatory intent.

52.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 52 are denied.

14

53.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 53 are denied. Furthermore, statements on social media by third parties have no bearing on the question of whether the Georgia Legislature acted with discriminatory intent.

54.     Denied.   Plaintiff fails to state the information upon which the allegation is based. Plaintiff alleges that Black voters are less likely to possess a DDS-issued ID.  However, DDS-issued ID information was required to request an absentee ballot in the 2020 election. This is the same election that Plaintiff alleges a massive increase in Black voters' use of absentee ballots. Compl. at 7.

55.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 55 are denied.

56.     Georgia law speaks for itself.  Intervenor denies any characterizations contained in Plaintiff's allegations.

57.     Georgia law speaks for itself.  Intervenor denies any characterizations contained in Plaintiff's allegations.

58.     Denied. To the extent this paragraph states factual allegations, Plaintiffs have failed to provide the information upon which the allegations are based.

59.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 59 are denied.

60.     Admit that State Election Board Rule 183-1-14-0.6-14 was a temporary provision and that the Rule speaks for itself. Deny as to Plaintiff's characterization of the basis for the promulgation of the temporary rule.

61.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 61 are denied. State Election Board Rule 183-1-14-0.6-14 was a temporary Rule and speaks for itself.

62.     State Election Board Rule 183-1-14-0.6-14 was a temporary Rule and speaks for itself.

63.     Admit to the extent that Drop boxes were temporarily utilized in Georgia for the 2020 election. Deny as to the rest of the allegations contained in paragraph 63.

64.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 64 are denied.

65.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 65 are denied.

66.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 66 are denied.

67.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations.

68.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations.

69.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations.

70.     Georgia law speaks for itself. Plaintiff's additional characterization of their action, issues and legal arguments or conclusions of law do not require a

response, and to the extent a response is required, Intervenor denies the allegations in paragraph 70.

71.     To the extent that a response is required, Intervenor denies the allegations in paragraph 71. Drop boxes for absentee voting were not legal in Georgia prior to the 2020 election cycle. State Election Board Rule 183-1-14-0.6-14 was implemented due to COVID 19 health concerns and was temporary. SB 202 makes the allowance of drop boxes permanent and represent an additional convenience to all voters in Georgia.

72.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 72 are denied.

73.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 73 are denied.

74.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations. Moreover, there is an overwhelming state interest in preventing third parties from distributing things of value to voters

waiting in line, even if it is food and water. Bribery, intimidation, coercion and threats are all mitigated by preventing such behavior.

75.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 75 are denied.  Moreover, this allegation has no relevance whatsoever to a Section 2 cause of action. It is an allegation asserting the interests of third parties not present in this case, but wholly unrelated to the powers of the Untied States under the Voting Rights Act to assert.

76.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations.  This claim has been foreclosed by the United States Supreme Court.

77.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations. This claim has been foreclosed by the United States Supreme Court.

78.     Georgia law speaks for itself. Intervenor denies any characterizations contained in Plaintiff's allegations. This claim has been foreclosed by the United States Supreme Court.

79.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these

allegations. Other than as admitted, the allegations contained in paragraph 79 are denied. This claim has been foreclosed by the United States Supreme Court.

80.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. This paragraph also contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. Other than as admitted, the allegations contained in paragraph 80 are denied. This claim has been foreclosed by the United States Supreme Court.

81.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 81 are denied.

82.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 82 are denied.

83.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 83 are denied.

84.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 84 are denied. If Plaintiff's allegations that the 2018 election yielded high turnout rates for Black voters, such was accomplished without the use of drop boxes or other processes promoting the casting of an absentee ballots.

85.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 85 are denied.  Moreover, Plaintiff's allegations are wholly irrelevant to a claim under Section 2 of the Voting Rights Act and, to the extent accurate, are improperly asserting the interests of a third party not present in this litigation, not the interests of the United States.

86.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 86 are denied.  Moreover, Plaintiff's allegations are wholly irrelevant to a claim under Section 2 of the Voting Rights Act and, to the extent accurate, are improperly asserting the interests of a third party not present in this litigation, not the interests of the United States.

21

87.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 87 are denied.

88.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 88 are denied.

89.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 89 are denied.  Moreover, "popular public perception" has never been deemed to be relevant evidence in a claim brought under Section 2 of the Voting Rights Act, and certainly not in any prior well-considered Section 2 claim by the United States.

90.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 90 are denied.

91.     This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is

required. To the extent that a response is required, Intervenor denies the allegations in paragraph 91.

92.    Admitted that Reverend Raphael Warnock advanced to a runoff election against incumbent Senator Kelly Loeffler. Denied that this fact is relevant evidence for a violation of Section 2 of the Voting Rights Act.

93.    This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 93. Moreover, the import of Plaintiff's position is that states must beware in enacting any election law change after an election where some black candidates enjoy success. Such an allegation is wholly irrelevant to a claim under Section 2 and is an inappropriate inference that has no place in a Section 2 complaint.

94.    To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 94 are denied.

95.    To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these

allegations. Other than as admitted, the allegations contained in paragraph 95 are denied.

96.     Admitted that Reverend Raphael Warnock and Jon Ossoff were elected on January 5, 2021. Intervenor denies Plaintiff's characterization of black turnout. Intervenor denies that this fact is relevant evidence for a violation of Section 2 of the Voting Rights Act.

97.     The allegations contained in paragraph 97 are denied. Plaintiff's reliance on the actions of an unknown third party cannot be used to infer discriminatory intent of members of the Georgia Legislature.  Use of these appeals as relevant evidence is improper and results in the denial of due process rights as there can be no rebuttal to the use of this evidence by the accused state defendant Use of racial appeal evidence in this context is an unconstitutional application of Section 2.

98.     To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. The allegations contained in paragraph 98 are denied. To the extent Plaintiff's allegations are true the actions of unknown third parties cannot be used to infer discriminatory intent to members of the Georgia Legislature. Use of third-party racial appeals as evidence against a state defendant is improper and results in the denial of due process as there is no rebuttal available to the state defendant.

Use of racial appeal evidence in this context is an unconstitutional application of Section 2.

99.    Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Therefore, the allegations contained in paragraph 99 are denied. Plaintiff's reliance on the actions of an unknown third party is not evidence of discriminatory intent by members of the Georgia Legislature.  Use of third- party racial appeals as evidence against a state defendant is improper and results in the denial of due process as there is no rebuttal available to the state defendant.  Use of racial appeal evidence in this context is an unconstitutional application of Section 2.

Use of racial appeal evidence in this context is an unconstitutional application of Section 2.

100.   Whether or not the mainstream media covered an election is wholly irrelevant to a Section 2 claim under the Voting Rights Act.  To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 100 are denied.

101.   Georgia law speaks for itself. Intervenor denies Plaintiff's characterization of the information contained in paragraph 101.

102.    This paragraph contains Plaintiff's characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 102.

103.    This paragraph contains Plaintiff's characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 103.  Moreover, the allegations relate to matters wholly irrelevant to a Section 2 claim under the Voting Rights Act.

104.    To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 104 are denied.

105.    To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. The allegations contained in paragraph 105 are denied. Moreover, the allegations relate to matters wholly irrelevant to a Section 2 claim under the Voting Rights Act.

106.    To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these

allegations and are denied. Acts by outside individuals are not relevant and may not be used to infer discriminatory motives to members of the Georgia Legislature. The United States Supreme Court has found such evidence to be irrelevant in a Section 2 claim. The allegations relate to matters wholly irrelevant to a Section 2 claim under the Voting Rights Act.

107.   Denied. While the Plaintiff may be tempted to turn this litigation into an effort to engage on the wider issues related to President Trump and voter fraud, the allegations relate to matters wholly irrelevant to a Section 2 claim under the Voting Rights Act.

108.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 108 are denied. Again, the United States has improperly sought to stoke controversy by including an allegation that has nothing whatsoever to do with a Section 2 claim.

109.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 109.

110.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is

required. To the extent that a response is required, Intervenor denies the allegations in paragraph 110.

111.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 111. The allegations relate to matters wholly irrelevant to a Section 2 claim under the Voting Rights Act.

112.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 112 are denied.

113.   The allegations contained in paragraph 113 are denied.  Moreover, such evidence is irrelevant to prove intentional discrimination. Punishing state legislatures for appointing special committees – something wholly within the power of the legislature to do – would extend Section 2 beyond Constitutional bounds. Appointing a committee that is within the power of the legislature to appoint is not a deviation from normal procedures.

114.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these

allegations. The allegations contained in paragraph 114 are denied.  Moreover, none of the statement quoted is relevant to prove a violation of Section 2.

115.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 113 are denied. Moreover, such evidence is irrelevant to prove intentional discrimination. Focus on the race of legislative sponsors would extend Section 2 beyond Constitutional bounds.

116.   Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations and the allegations contained in paragraph 116 are denied.

117.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. The allegations contained in paragraph 117 are denied. Moreover, such evidence is irrelevant to prove intentional discrimination. Using the race of legislators voting for or against a measure would extend Section 2 beyond Constitutional bounds.

118.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these

29

allegations. Other than as admitted, the allegations contained in paragraph 118 are denied.

119.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 119 are denied.

120.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 120 are denied.  Moreover, gripes about how much time draft legislation was available to review is commonplace in legislatures across the United States, and in Congress. It is hardly a deviation from normal procedures to provide drafts with less time to review that most legislators would prefer. Nor could it possibly be considered evidence of racial intent without straining the constitutional limits of Section 2.

121.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 121 are denied.

122.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these

allegations. Other than as admitted, the allegations contained in paragraph 122 are denied. Rep. Chuck Martin is right.  It is universally understood that absentee voting is the most susceptible to fraud. *See* Report of the Commission on Federal Election Reform, Building Confidence in U. S. Elections §2.5 (Sept. 2005) (Carter-Baker Report), App. 136–144. In fact, the Plaintiff brought a case where absentee balloting was replete with "foolishness."  The United States is well aware of the unique dangers imposed by absentee ballots and their particular susceptibility to fraud and manipulation.  *See, United States vs. Ike Brown,* 494 F.Supp.2d 440, 455-61 (S.D. Miss. 2007).

123.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 123 are denied.

124.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 124 are denied.

125.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 125 are

31

denied. Moreover, this is not a deviation from regular procedures and is therefore not relevant.

126.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 126 are denied.

127.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 127 are denied.

128.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 128 are denied. Concocted rhetoric that this or that will "suppress" a vote, without any evidence or reasoning is not relevant evidence to show a Section 2 violation without straining the constitutional limits of Section 2 to their breaking point. Moreover, this is not a deviation from regular procedures and is therefore not relevant.

129.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these

allegations. Other than as admitted, the allegations contained in paragraph 129 are denied.  It is outlandish to allege that the wishes of an interest group to have more time – the Association of County Commissioners of Georgia – in any way has any relevance to a Section 2 claim.

130.   Denied and the allegations are irrelevant to a Section 2 claim.

131.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 131 are denied.

132.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 132 are denied.

133.   Denied, and to the extent it is not denied the allegation contains exaggerations and language intended to inflame and should be stricken. It contains allegations wholly irrelevant to a Section 2 claim.  Who is present at a bill signing or what happens when someone tries to trespass into the Georgia Governor's office is wholly irrelevant to a Section 2 claim.

134.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is

required. To the extent that a response is required, Intervenor denies the allegations in paragraph 134.  Moreover, using Section 2 to strike down a state law under these facts and circumstances would render Section 2 unconstitutional as applied.

135.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 135.

136.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies each of the several allegations in paragraph 136, and alleges the following:

The racial history that Plaintiff alleges date back to 1968 and is certainly not contemporaneous. Plaintiff has failed to allege one current act of discrimination by any member of the Georgia Legislature. Under the Voting Rights Act, the alleged discrimination must be real and relevant to contemporaneous life. The official discrimination must relate to voting and cannot be so ancient that it has no echoes in modern life.

The Voting Rights Act has been in effect since 1965. Yet, Plaintiff has failed to ever bring a Section 2 intentional discrimination claim against the State of Georgia until the current lawsuit. The lack of any intentional discrimination

lawsuits by the United States contradicts Plaintiff's claims of a history of discrimination in voting against Black voters. Similarly, since 2000 there were only 2 Objections under Section 5 of the Voting Rights Act. One involved a County, not the State, while the other involved a voter list maintenance program the State submitted to comply with the new requirements of the Help America Vote Act (HAVA). The Attorney General made no finding of a discriminatory purpose. (Previously attached as EXH. A)

Plaintiff alleges that there is a history of racially polarized voting. According to Plaintiff, as of 2021, Non-Hispanic Black voters only comprise 30.0 percent of Georgia's registered voters. Compl. at 6. Raphael Warnock, a Black candidate was elected to the Senate in the 2021 U.S. Senate Run-Off. Plaintiff fails to even acknowledge that Senator Warnock's victory was certainly the result of significant White crossover voting.

Plaintiff alleges that Black Georgians will not be able to satisfy the new criteria in SB 202. However, Plaintiff fails to mention that since 2007 all Georgians regardless of race have been required to present an ID to vote in person. As Plaintiff has alleged it is only in recent years that Black Georgians have begun utilizing absentee voting. Compl. at 6. Yet despite Georgia's ID requirement Plaintiff alleges that Black voter registration in the State of Georgia has continued to rise. Furthermore, Georgia's voter identification law was precleared by the

Department of Justice after review by the Voting Section and recommendation to the Attorney General. Interestingly, several of the present signatories on this complaint were employed by the DOJ at the time the Georgia ID law was precleared.

Plaintiff alleges that the State of Georgia has no evidence of voter fraud to justify the election integrity measures contained in SB 202. If true the absence of voter fraud does not evidence a discriminatory purpose by the Georgia State Legislature.  "A State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders. Section 2's command that the political processes remain equally open surely does not demand that "a State's political system sustain some level of damage before the legislature [can] take corrective action." *Munro v. Socialist Workers Party*, 479 U. S. 189, 195 (1986). "Fraud is a real risk that accompanies mail-in voting" *Brnovich v. Democratic Nat'l Comm.*, Nos. 19-1257, 19-1258, 2021 U.S. LEXIS 3568, at *54 (July 1, 2021). "A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U. S. 1, 4 (2006) (per curiam) (internal quotation marks omitted).

 "One strong and entirely legitimate state interest is the prevention of fraud. Fraud can affect the outcome of a close election, and fraudulent votes dilute the right of citizens to cast ballots that carry appropriate weight. Fraud can also

undermine public confidence in the fairness of elections and the perceived

legitimacy of the announced outcome." *Brnovich v. Democratic Nat'l Comm*., Nos.

19-1257, 19-1258, 2021 U.S. LEXIS 3568, at *36-37 (July 1, 2021).

A more restrictive out of precinct vote prohibition in the State of Arizona

passed constitutional muster. The Supreme Court in upholding the Arizona

prohibition noted that

> precinct-based voting furthers important state interests. It helps to distribute voters more evenly among polling places and thus reduces wait times. It can put polling places closer to voter residences than would a more centralized voting center model. In addition, precinct-based voting helps to ensure that each voter receives a ballot that lists only the candidates and public questions on which he or she can vote, and this orderly administration tends to decrease voter confusion and increase voter confidence in elections. *See* 329 F. Supp. 3d, at 878. It is also significant that precinct-based voting has a long pedigree in the United States. *See* 948 F. 3d, at 1062–1063 (Bybee, J., dissenting) (citing J. Harris, Election Administration in the United States 206–207 (1934)). And the policy of not counting out-of-precinct ballots is widespread. *See* 948 F. 3d, at 1072–1088 (collecting and categorizing state laws).

*Brnovich v. Democratic Nat'l Comm*., Nos. 19-1257, 19-1258, 2021 U.S. LEXIS

3568, at *48-49 (July 1, 2021).

137.   This paragraph contains Plaintiff's characterization of its action, the

laws at issue, legal arguments, or conclusions of law, to which no response is

required. To the extent that a response is required, Intervenor denies the allegations

in paragraph 137.

138.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 138.

139.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 139.

140.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 140.

141.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 141.

142.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 142 are denied.

38

143.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 143.

144.   To the extent this paragraph states factual allegations, Intervenor lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Other than as admitted, the allegations contained in paragraph 144 are denied.

145.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 145.

146.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 146. Official discrimination must relate to voting and cannot be so ancient that it has no echoes in modern life. Under the Voting Rights Act the official discrimination must relate to voting and cannot be so ancient that it has no echoes in modern life. On the one hand Plaintiff alleges that black voters have less access to the internet to request an absentee ballot. But, in 2020 when Plaintiff

alleges that Black voter turnout increased dramatically, absentee ballot requests were also required to be made online. Plaintiff claims that Black voters are less likely to own a vehicle is irrelevant. Traveling to effect casting a ballot is not an impermissible burden to voting. "Having to identify one's polling place and then travel there to vote does not exceed the "usual burdens of voting." *Crawford v. Marion County Election Bd.,* 553 U.S. 181, 553 (2008)

147.  This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 147.

148.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 148. Plaintiff has failed to provide one instance of current official discrimination.

149.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 149.

150.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 150.

151.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 15d1.

152.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 152.

153.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 153.

154.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 154.

155.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 155.

156.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 156.

157.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 157.

158.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 158.

159.   The Foundation's responses to the above paragraphs are incorporated by reference here.

160.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is

required. To the extent that a response is required, Intervenor denies the allegations in paragraph 160.

161.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 161. Intervenor denies Plaintiff's characterization of SB 202.

162.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 162.

163.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 163.

164. This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, Intervenor denies the allegations in paragraph 164.

165.   This paragraph contains Plaintiff's characterization of its action, the laws at issue, legal arguments, or conclusions of law, to which no response is

required. To the extent that a response is required, Intervenor denies the allegations in paragraph 165.

## AFFIRMATIVE DEFENSES

Defendant Intervenor asserts three affirmative defenses:

### Section 2 is Unconstitutional if Applied to Invalidate a State Law in this Circumstance.

1.      To the extent that Plaintiff's Complaint alleges that Georgia's election law violates the Voting Rights Act, the Act is unconstitutional as applied to these facts and circumstances because they are inconsistent with the purpose of the Fifteenth Amendment and exceed Congress's authority to enforce the right to vote regardless of race as found in the Fifteenth Amendment.

### Partisanship, Not Race

2.      Plaintiff here actually seeks to vindicate partisan interests, not racial ones. Plaintiff arguments are aimed at helping Democrats win, not protecting racial minorities. Otherwise, Plaintiff would have confined the factual allegations in the complaint to well pled facts with a long-established jurisprudence to support their relevance. In a Voting Rights Act case brought under Section 2, a defendant may establish as a defense that the defendant acted with partisan interests, not racial ones. Here, the legislature may have done so in addition to acting with the intent to secure the integrity of the ballot. If indeed the legislature acted with a partisan interest, the

Plaintiff has returned the favor and brought an action designed, in whole or in part, to attack any partisan gain made or partisan purpose of the Georgia legislature. Because the issues surrounding voting and election process are so intertwined with partisan issues, this case is ultimately an effort to assert partisan interests. The Plaintiff is not above such a motive. Indeed, the issue of election integrity, voting rights and Section 2 have become interwoven with partisan disputes.  To the extent the Georgia legislature acted with any intent besides the intent to secure Georgia elections, it was a partisan intent, not a racial one.

## **Inadequate Facts Alleged**

3.      Federal Rule of Civil Procedure requires a showing of entitlement to relief. Such a showing cannot be made by mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint is riddled with factual allegations that, even if true, do not entitle Plaintiff to relief under Section 2 of the Voting Rights Act. Many of these allegations bear no relevance to a claim under Section 2 of the Voting Rights Act properly applied, while others are simply conclusory, and lack any evidentiary allegation showing present official discrimination in voting. Plaintiff has failed to state a plausible claim that the Defendants have violated Section 2.

Respectfully Submitted, this 2nd day of July, 2021.


*/s/ Harry W. MacDougald* (Ga. # 463076)
*Counsel of Record*
CALDWELL, CARLSON, ELLIOTT & DELOACH, LLP
Two Ravinia Drive, Suite 1600
Atlanta, GA 30346
(404) 843-1956
hmacdougald@ccedlaw..com

Kaylan L. Phillips (Ind. # 30405-84)*
J. Christian Adams (Va. Bar #42543)*
Maureen S. Riordan (NY Bar 2058840)*
Public Interest Legal Foundation
32 E. Washington St., Suite 1675
Indianapolis, Indiana 46204
(317) 203-5599
(888) 815-5641 (facsimile)
kphillips@publicinterstlegal.org
*Motion for admission *pro hac vice* forthcoming

## RULE 5.1 CERTIFICATE

The undersigned certifies that the foregoing document was prepared in 14-point Times New Roman font and in accordance with the margin and other requirements of Local Rule 5.1.


s/ Harry W. MacDougald
Harry W. MacDougald
Georgia Bar No. 463076

## CERTIFICATE OF SERVICE

This is to certify that I have on this day e-filed the foregoing ***Public Interest Legal Foundation's Proposed Answer*** with the Clerk of Court using the CM/ECF system, which will send an email notification of such filing to counsel of record:

This 2nd day of July, 2021.

/s/ Harry W. MacDougald
Harry W. MacDougald
Georgia Bar No. 463076

CALDWELL, CARLSON, ELLIOTT & DELOACH, LLP
Two Ravinia Drive, Suite 1600
Atlanta, GA 30346



**U.S. Department of Justice**

Civil Rights Division

_____

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

May 29, 2009

The Honorable Thurbert E. Baker
Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia   30334-1300

Dear Attorney General Baker:

This refers to the establishment of the voter verification program for voter registration application data, including citizenship status, and changes to the voter registration application for the State of Georgia, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.  We received your response to our December 15, 2008 request for additional information on March 30, 2009; supplemental information was received on April 2, 2009.

We turn first to the verification program for voter registration application data contained in Submission 2008-5243.  Changes to the voter registration process constitute a voting change under Section 5.  Procedures for the Administration of Section 5 of the Voting Rights Act of 1965, 28 C.F.R. § 51.13(b); Morales v. Handel, Civil Action No. 1:08-CV-3172-JTC (N.D. Ga. Oct. 27, 2008).  As such, the submitting authority has the burden of establishing that a proposed change does not have a retrogressive effect on the ability of minority voters to participate in the political process and to elect candidates of choice, nor a discriminatory purpose.  Georgia v. United States, 411 U.S. 526 (1973); 28 C.F.R. § 51.52.  The voting change at issue must be measured against the benchmark practice to determine whether the opportunities of minority voters to participate in the political process and elect candidates of their choice will be "augmented, diminished, or not affected by the change affecting voting." Beer v. United States, 425 U.S. 130, 141 (1976).

We have carefully considered the information you have provided, as well as information from other interested parties.  Under Section 5, the Attorney General must determine whether the submitting authority has met its burden of showing that the proposed change "neither has the purpose nor will have the effect" of denying or abridging the right to vote on account of race, color or membership in a language minority group.  As discussed further below, I cannot conclude that the state has sustained its burden in this instance.  Therefore, based on the information available to us, I must object to the voter verification program, on behalf of the Attorney General.

-2-

Under the benchmark system, all applicants swear or affirm, under penalty of law, on a voter registration application form that the information they are providing, including their citizenship status, is true. No further information is statutorily required. Under normal circumstances, registering to vote in Georgia is a single action, which can be accomplished at the applicant's convenience. Challenges to an individual's eligibility on any basis, including citizenship, happen infrequently under the benchmark system, by the state's own admission. Under the benchmark system, the state has indicated that there is no program for automated verification of information contained on voter registration applications.

The proposed verification system seeks to match the information provided by the applicant with the information maintained by the state's Department of Driver Services [DDS] and, in many cases, the federal Social Security Administration [SSA], and provides a list of those persons whose information does not match to local registrars for further inquiry. As an initial matter, we address the state's claim that it adopted the submitted verification system as part of its program for implementation of the minimum requirements for elections for federal office contained in the Help America Vote Act of 2002, 42 U.S.C. § 15301 et seq. Specifically, the state has indicated that the verification program was adopted to implement the requirements of Section 303(a)(5) of HAVA, after the state lost a private lawsuit challenging the state's previous full social security number requirement for voter registration.

A brief recap of the relevant HAVA requirements is in order. As part of the requirement that states create a computerized statewide voter registration database for elections for federal office, HAVA provides that, for a state that does not require a full social security number, it cannot accept or process an application for voter registration unless the applicant provides a driver license number or, where the applicant does not have such a number, the last four digits of the applicant's social security number. In the absence of either number, HAVA requires a state to issue the applicant a unique identification number. 42 U.S.C. § 15483(a)(5)(A)(i) and (ii). Consistent with this requirement, HAVA next provides for the attempted verification of these types of numbers and accompanying identification information, such as name and date of birth, through the use of either the state driver license agency database or, as necessary, the SSA database. 42 U.S.C. § 15483(a)(5)(B). Finally, HAVA leaves it up to the state as to whether the information provided by an applicant is sufficient to meet HAVA's requirements, in accordance with state law. 42 U.S.C. § 15483(a)(5)(A)(iii). Thus, these HAVA requirements are directed at identification, not eligibility. See Florida State Conf. of the NAACP v. Browning, 522 F.3d 1153, 1168 (11th Cir. 2008). HAVA does not speak to the question of whether a state should deem an applicant eligible or ineligible, whose information fails to match on some element contained in a state or federal database. Indeed, HAVA takes no position concerning verification of citizenship, neither requiring nor prohibiting state action to verify the citizenship of voter registration applicants. Likewise, HAVA explicitly grants the state discretion in how it implements its requirements, see, e.g., 42 U.S.C. §§ 15484-15485. Such discretion on the part of state officials is the touchstone for coverage under Section 5. Young v. Fordice, 520 U.S. 273 (1997).

-3-

We now proceed to discuss the substance of the state's verification program. The results of the verification matching process described above are contained in two reports generated by the state for local registrars: the R1 and R2. The R1 report, which attempts to verify information other than citizenship, results from a data comparison that we agree with the state is required by HAVA; the issue is what the state in its discretion chooses to do with that information. The R2 report, which seeks to verify citizenship status, results from a data comparison that is discretionary on the state's part. The state has informed us that it intends to utilize the information concerning non-matches set forth in these reports in the following way:

> The R1 report lists non-matched registrants for the following criteria: first name, last name, date of birth, driver's license number and last four digits of a social security number. A failure to match in any of those categories [on the R1], pursuant to the HAVA verification process, means that the applicant has not been verified as required by HAVA and they are not considered a registered voter at that point in time.

> Failures to verify or match on the criteria of citizenship are listed on the R2 report. The failure to match on this criterion is treated in the same way failures to match on other criteria listed above.

> In all instances, a failure to verify registration then triggers further inquiry by the county registrars to resolve any questions in order to verify the registration and move the applicant onto the registration list.

Letter of March 24, 2009, at 20-21. Thus, "non-matched registrants," who have submitted registration applications or changes to their existing registration, must take further steps to establish their voting eligibility. Under the state's proposed procedures, pursuant to state law, local election officials can require these individuals also to appear at the county courthouse or office building, not at the voter's convenience, but rather on a week day, during normal business hours and, pursuant to state law, with only three days notice. O.C.G.A. § 21-2-228.

Because the state implemented these changes in violation of Section 5, see Morales, supra, we have the actual results of the state's verification process. As of March 13, 2009, a total of 199,606 individuals are flagged as a "non-match based on any criteria" on the R1 report. Since its inception, the R2 report has flagged 7,007 individuals as potential non-citizens. Under the state's proposed procedures all of the individuals flagged would have to take further, inconvenient steps to be considered registered voters.

We have considered the accuracy of the state's verification process. Our analysis shows that the state's process does not produce accurate and reliable information and that thousands of citizens who are in fact eligible to vote under Georgia law have been flagged. As an example, recent deposition testimony by state employees in the Morales litigation indicates that an error as simple as transposition of one digit of a driver license number can lead to an erroneous notation of a non-match across all compared fields. In addition, the state's response to the Department's

-4-

October 2008 inquiry concerning the state's use of the SSA HAVV system indicates error-laden and possibly improper use of the system, thereby increasing the potential for unreliable results. The R2 report has flagged a large number of persons who have subsequently demonstrated that they are in fact citizens. Indeed, of the 7,007 individuals who have been flagged on the R2 report as potential non-citizens, more than half were in fact citizens. Perhaps the most telling statistic concerns the effect of the verification process on native-born citizens. Of those persons erroneously identified as non-citizens, 14.9 percent, more than one in seven, established eligibility with a birth certificate, showing they were born in this country. Another 45.7 percent provided proof that they were naturalized citizens, suggesting that the driver's license data base is not current for recently naturalized citizens.

The impact of these errors falls disproportionately on minority voters. Although the state has not provided data on the racial and language minority characteristics of all registrants whose applications went through the verification process, we have been able to compare the composition of those persons whom the state has flagged for further inquiry because of a non-match with both the composition of newly-registered voters in the state and the composition of existing registered voters. Under either comparison, applicants who are Hispanic, Asian or African American are more likely than white applicants, to statistically significant degrees, to be flagged for additional scrutiny.

African Americans comprise a majority of the registrants flagged by the R1 report. Whether one compares the over-representation of African Americans on the R1 with the number of new registrants between May 2008 and March 2009 or with the number of the state's registered voters as a whole, the different rate at which African American applicants are required to undertake an additional step before becoming eligible voters is statistically significant. The effect demonstrated by the R2 report is similarly dramatic. Although African American and white voters represent approximately equal shares of the new voter registrants between May 2008 and March 2009, more than sixty percent more African Americans voters who registered during this period are currently flagged than are whites. Again, this rate is statistically significant. Similar disproportion arises with regard to flagged Asians and Hispanics on the R2 report. Hispanic and Asian individuals are more than twice as likely to appear on the list as are white applicants. Each of the differences is statistically significant.

In sum, the state's proposed procedures for verifying voter registration information are seriously flawed. This flawed system frequently subjects a disproportionate number of African-American, Asian, and/or Hispanic voters to additional and, more importantly, erroneous burdens on the right to register to vote. These burdens are real, are substantial, and are retrogressive for minority voters. As such, an objection based upon the state's failure to establish the absence of a discriminatory effect is warranted.

In making this determination, we note that Section 5 does not prohibit a state from taking steps to ensure that only qualified individuals are registered to vote. The state must ensure that the discretionary manner in which it does so is not discriminatory. Common Cause v. Billups, 504 F. Supp. 2d 1333, 1377 (N.D. Ga. 2007), aff'd, 554 F.3d 1340 (11th Cir. 2009). In Billups,

the absence of a disparate racial effect permitted Georgia to require voters to present appropriate photographic identification as a prerequisite to voting.  In <u>Crawford</u> v. <u>Marion County Election Board</u>, --- U.S. ---, 128 S.Ct. 1610 (2008), the Supreme Court rejected a facial challenge to Indiana's voter identification law.  Notably, the decisions in both <u>Crawford</u> and <u>Common Cause</u> resulted from a record totally devoid of evidence of a discriminatory effect flowing from the regulations at issue.  <u>Crawford</u>, at 1622-23; <u>Common Cause</u>, at 1378.  That discriminatory effect, however, is present here.

Based upon our extensive review of the available information, and our extensive discussions with the state, we believe there are alternatives available to the state that could mitigate or eliminate the identified discriminatory impact of the changes at issue without affecting adversely the state's asserted goal of preventing voter fraud.  We believe it would be appropriate and desirable to discuss with the state such alternative approaches.  We also note that the state has very recently enacted legislation codifying a requirement for documentary proof of citizenship for voter registration, which includes a requirement for the adoption of new regulations implementing such legislation.  When submitted for Section 5 review, these changes may affect the analysis of the voter verification program.

We note that under Section 5 you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed changes neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group.  28 C.F.R. § 51.44.  In addition, you may request that the Attorney General reconsider the objection.  28 C.F.R. § 51.45.  However, until the objection is withdrawn or a judgment from the United States District Court for the District of Columbia is obtained, the changes to the state voter information verification program described above will continue to be legally unenforceable.  <u>Clark</u> v. <u>Roemer</u>, 500 U.S. 646 (1991); 28 C.F.R. § 51.10.

With regard to the changes to the voter registration application contained in Submission No. 2009-0284, they are related to the state's implementation of the voter information verification program, which is legally unenforceable.  Accordingly, it would be inappropriate for the Attorney General to make a determination on those changes at this time.  28 C.F.R. §§ 51.22 and 51.35.  We note that the Court in <u>Morales</u> found that the disparate methodologies adopted by the counties may be a change requiring review under Section 5.  However, because those methodologies have not been submitted for Section 5 review, it is neither necessary nor appropriate for us to make any determination on them at this time; nor do we, similar to the Court in <u>Morales</u>, make a determination at this time as to whether each of the state's 159 counties must make a separate submission.

-6-

Because the Section 5 status of these changes are before the Court in <u>Morales,</u> we are providing a copy of this letter to the Court and counsel of record.  To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action that the State of Georgia plans to take concerning this matter.  If you have any questions concerning this letter, please call Robert S. Berman, a Deputy Chief in the Voting Section, at 202/514-8690.

Sincerely,

Loretta King
Acting Assistant Attorney General
Civil Rights Division