IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

THE STATE OF GEORGIA; THE
GEORGIA STATE ELECTION
BOARD; and BRAD
RAFFENSPERGER, in his official
capacity as Georgia Secretary of State,

Defendants.

Civil Action No.

1:21-CV-2575-JPB

## RESPONSE IN OPPOSITION BY THE UNITED STATES TO MOTION TO INTERVENE BY PUBLIC INTEREST LAW FOUNDATION

The United States respectfully submits the following response in opposition

to the Motion to Intervene filed by Public Interest Legal Foundation ("PILF")

(ECF No. 11).  PILF is not entitled to intervention as of right under Rule 24(a)(2)

because it has failed to establish that it has a protectable interest that would be

impeded or impaired by this action, and because, even if it had such an interest, it

has failed to show that the existing defendants would not adequately represent that interest.  In addition, because PILF seeks to pursue issues that are collateral to this litigation, permitting its intervention would needlessly complicate discovery and delay resolution of this case, and thus permissive intervention under Rule 24(b) is inappropriate as well.  Thus, the United States respectfully asks that the Court deny the motion to intervene, both as of right under Rule 24(a)(2) or permissively under Rule 24(b), as courts have done in similar cases where advocacy groups have moved to intervene as defendants.  *See, e.g.*, *Veasey v. Perry*, 577 F. App'x 261 (5th Cir. 2014) (affirming district court's order denying motion to intervene in case challenging Texas's photo voter ID law under Section 2 of the Voting Rights Act); *United States v. North Carolina*, No. 1:13-cv-861, 2014 WL 494911 (M.D.N.C. Feb. 6, 2014) (denying motion to intervene in case challenging provisions of North Carolina's omnibus election bill under Section 2 of the Voting Rights Act); *United States v. Florida*, No. 4:12-cv-285, 2012 WL 13034013 (N.D. Fla. Nov. 6, 2012) (denying motions to intervene in case under National Voter Registration Act challenging Florida's systematic removal of voters from its registration list).

## I.      STATEMENT OF FACTS

On June 25, 2021, the United States brought this action against the State of

2

Georgia, the Georgia State Election Board, and the Georgia Secretary of State (collectively "State Defendants"), alleging that certain provisions of Georgia Senate Bill 202 (2021) ("SB 202") violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.  These provisions include (a) a ban on governmental entities distributing unsolicited absentee ballot applications (SB 202 § 25); (b) onerous fines on civic organizations that distribute duplicate or follow-up absentee ballot request forms to voters (§ 25); (c) a requirement that voters who do not have identification issued by the Georgia Department of Driver Services photocopy another form of identification in order to request an absentee ballot (§ 25); (d) a reduction in the period of time during which registrants can request absentee ballots (§ 25); (e) a reduction in the number of absentee ballot drop boxes, as well as the days and hours during which voters may use the drop boxes (§ 26); (f) a ban on civic groups providing food or water to persons waiting in long lines to vote (§ 33); and (g) a prohibition on counting most out-of-precinct provisional ballots (§ 34).

The United States' complaint alleges that these provisions were adopted with the purpose of denying or abridging the right to vote on account of race or color, in violation of Section 2 and the voting guarantees of the Fourteenth and

Fifteenth Amendments to the United States Constitution.  The complaint seeks declaratory and injunctive relief, as well as relief pursuant to Sections 3(a) and 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(a) and (c).

The United States' action is one of several cases in this Court challenging various provisions of SB 202.  On July 12, 2021, the Court granted the Republican National Committee, National Republican Senatorial Committee, and Georgia Republican Party's motion for permissive intervention as defendants in this case under Rule 24(b), to which the United States consented.  PILF filed its motion to intervene here on July 2, 2021; it did not move to intervene in any of the related cases.

## II.    INTERVENTION OF RIGHT

### A.    Legal Standard

Under Federal Rule of Civil Procedure 24(a)(2), intervention is available as a matter of right if, by timely motion, the movant can show (1) an interest relating to the property or transaction that is the subject of the action; (2) that it is so situated that disposition of the action, as a practical matter, may impair or impede its ability to protect that interest; and (3) that its interest is not adequately represented by existing parties to the litigation.  Fed. R. Civ. P. 24(a)(2); *see also*

4

*Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir.

1982).  All of these criteria must be met before intervention of right is appropriate.

*See Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910-11 (11th Cir. 2007) (denying

intervention because movant failed to establish that its interest was represented

inadequately by named defendant); *Worlds v. Dep't. of Health & Rehab. Servs.,*

*State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991) (declining to consider adequacy

of representation because movant failed to prove that his interests would be

impaired).[1]

    To meet the first criterion, the movant must demonstrate an interest in the

litigation that is "direct, substantial [and] legally protectible." *Athens Lumber Co.*,

690 F.3d at 1366.  A generalized interest in the subject matter of the pending

litigation does not qualify as a protectable interest within the meaning of Rule

24(a).  "In essence, the intervenor must be at least a real party in interest in the

transaction which is the subject of the proceeding." *Id.* (concluding that labor

union's interest in limiting direct campaign contributions by corporations was too

general to support intervention of right in case challenging campaign finance

---

[1] The United States agrees that PILF's motion to intervene is timely.

restrictions).

If it is able to demonstrate a sufficient interest in the litigation that may be impaired or impeded, a prospective intervenor must further show that its interest is not adequately represented by existing parties to the litigation.  Where an already participating party "seeks the same objectives as the would-be interveners," a presumption of adequacy of representation applies, and the moving party must "com[e] forward with some evidence to the contrary."  *Sierra Club*, 488 F.3d at 910.

### B.    PILF Is Not Entitled to Intervention of Right

####     1.    PILF lacks a significantly protectable interest that may be impaired or impeded by this litigation.

None of PILF's asserted interests is a "significantly protectable interest" related to this litigation and sufficient to justify intervention of right.  *Athens Lumber*, 690 F.2d at 1366 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).  PILF relies primarily on its interest in "preserving the constitutional balance between a state's power to control its own elections and Congress's legitimate constitutional authority to protect against racial discrimination through the [Voting Rights Act]."  PILF Br. at 7 (ECF No. 11-1); *see also id.* at 2-3.  It argues that "[p]reserving this balance serves to protect the interests and rights of

6

citizens to participate equally and fully in our electoral processes."  PILF Br. at 3.

These interests are the sort of generalized concerns that courts have held are insufficient to support intervention under Rule 24(a).  For example, in *Common Cause v. Lawson*, the court rejected PILF's motion to intervene in a case challenging an Indiana voter registration statute under the National Voter Registration Act.  No. 1:17-cv-3936, 2018 WL 1070472 (S.D. Ind. Feb. 27, 2018).  There, the court concluded that PILF's stated interests in "ensuring that the constitutional balance vesting state control over elections is preserved and that the democratic right to participate effectively and in state-prescribed elections is ensured for all citizens in Indiana" were "too generalized to afford a right to intervention under Rule 24(a)" because they mirrored the interests of every registered voter in Indiana.  *Id.* at *4-5.

PILF asserts these same generalized interests here, and as in *Common Cause*, they cannot justify intervention of right.  *Id.* at *5.  *See also United States v. Florida*, 2012 WL 13034013, at *1 (broad interest in maintaining accurate voting rolls to promote voter confidence in election integrity did not afford advocacy group a right to intervene); Order Denying Intervention of True the Vote at 1, *Veasey v. Perry*, No. 2:13-cv-00193, ECF No. 113 (S.D. Tex. Dec. 11, 2013)

7

(applying same reasoning in case challenging Texas's photo voter ID law under Section 2 of the Voting Rights Act) (Exhibit 1), *aff'd Veasey v. Perry*, 577 F. App'x 261.

Similarly, PILF's stated interests in "ensuring the enforcement of voter qualification laws and election administration procedures," PILF Br. at 2, are "so generalized, [they] will not support a claim for intervention of right." *Athens Lumber*, 690 F.2d at 1366 (intervention denied because labor union's "general concern" about the flood of corporate expenditures that would result if campaign finance restrictions were lifted was an interest "shared with all unions and all citizens" with similar concerns). *See also Smith v. Cobb Cty. Bd. of Elections and Registration*, 314 F. Supp. 2d 1274, 1312 (N.D. Ga. 2002) (denying intervention in redistricting case where movants' stated interest in achieving population equality among electoral districts was "an interest of all Cobb County voters that [was] not unique to the putative intervenors"); *Dillard v. City of Foley*, 926 F. Supp. 1053, 1062 (M.D. Ala. 1995) (denying intervention in Voting Rights Act case because proposed intervenors' interest in enforcement of Alabama annexation law was "shared by all citizens and municipalities of Alabama concerned about the policies and procedures of annexation").

8

##        2.        Any protectable interest that PILF may have is adequately
                    represented by existing parties.

Even if PILF had established a protectable interest that could be impaired by

disposition of this action, any such interest is already adequately represented in this

suit by State Defendants.  The Eleventh Circuit "presume[s] adequate

representation when an existing party seeks the same objectives as the would-be

interveners." *Sierra Club*, 488 F.3d at 910; *see also Athens Lumber*, 690 F.2d at

1366 ("Because both the union and the [Federal Election Commission] have the

same objective, we presume that the union's interest is adequately represented.").

"When, as here, that existing party is a government entity," the moving party must

"'make a strong showing of inadequate representation.'" *Burke v. Ocwen Fin.*

*Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020) (quoting *FTC v. Johnson*, 800 F.3d

448, 452 (8th Cir. 2015)).  Even absent this presumption, to establish inadequate

representation, PILF would have to demonstrate either (1) collusion between the

United States and State Defendants, (2) adversity of interests between itself and

State Defendants, or (3) nonfeasance by State Defendants.  *Stone v. First Union*

*Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004).  It has made no such showing.

The presumption of adequate representation applies here.  PILF's ultimate

objective is to uphold SB 202, which it considers a "reasonable law[] designed to

ensure the integrity of [Georgia's] election."  PILF Br. at 3.  State Defendants—

which include government entities responsible for the administration of elections,

represented by the State Attorney General, who is charged with defending the

State's laws—have the same objective.  Although State Defendants have not yet

filed a responsive pleading in this case, they have moved to dismiss all Section 2

claims in the related cases challenging SB 202, including claims alleging that the

statute was adopted with a discriminatory purpose.[2]  Like PILF, the State

Defendants contend that SB 202 is a "reasonable, nondiscriminatory" election law

that is designed to ensure "a safe and secure election."  *See, e.g.*, State Defs.' Br. in

Support of Mot. to Dismiss Pls.' First Am. Compl. at 1, *Sixth Dist. AME Church v.*

*Raffensperger*, 21-cv-1284, ECF No. 87-1 (June 7, 2021).   Like the labor union

whose motion to intervene was denied in *Athens Lumber*, PILF and State

---

[2] *See* Defs.' Mot. to Dismiss Compl., *The Concerned Black Clergy of Metro. Atlanta v. Raffensperger*, 21-cv-1728, ECF No. 46 (July 12, 2021); State Defs.' Mot. to Dismiss Pls.' First Am. Compl., *Ga. State Conf. of the NAACP v. Raffensperger*, 21-cv-1259, ECF No. 42 (June 11, 2021); State Defs.' Mot. to Dismiss Pls.' First Am. Compl., *Asian Americans Advancing Justice-Atlanta v. Raffensperger*, 21-cv-1333, ECF No. 41 (June 11, 2021); State Defs.' Mot. to Dismiss Pls.' First Am. Compl., *Sixth Dist. AME Church v. Raffensperger*, 21-cv-1284, ECF No. 87 (June 7, 2021); State Defs.' Mot. to Dismiss Pls.' First Am. Compl., *The New Ga. Project v. Raffensperger*, 21-cv-1229, ECF No. 45 (June 1, 2021).

Defendants "both have precisely the same objective"—to uphold the challenged statute.  *Athens Lumber*, 690 F.2d at 1367.

PILF's own statements reveal the extent to which its interests coincide with the State Defendants': PILF describes it mission as "*providing assistance to states that seek to exercise their constitutional powers to determine the rules and laws pertaining to their own state elections.*"  PILF Br. at 2 (emphasis added).  In a press release, it explained that it moved to intervene in this case in order "to help Georgia defend its legislation."[3]

The party best situated to defend the validity of SB 202 is the State itself. Indeed, "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government."  *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013).  State Defendants have "a much more direct and substantial stake in [this] dispute" over the validity of a state election law than a private advocacy group such as PILF.  *United States v. Florida*, 2012 WL 13034013, at *1 (denying intervention under Rule 24(a) and (b) in similar circumstances); *see also United*

---

[3] Public Interest Legal Foundation Press Release, dated July 6, 2021, available at https://publicinterestlegal.org/press/pilf-intervenes-to-protect-georgia-from-doj-abuse-of-power/ (last visited July 13, 2021).

11

*States v. North Carolina*, 2014 WL 494911, at *2-5 (same).

PILF argues that because State Defendants are public officials, they will not defend SB 202 as vigorously as PILF would, and they may decide to settle the lawsuit.  It also argues that State Defendants may feel "restrained" from asserting certain defenses, which PILF seeks to advance, for fear of "hostile attacks."  PILF Br. at 8.  These speculative assertions are insufficient to establish that PILF's ultimate objective differs from that of State Defendants, or that State Defendants will not adequately represent their interests.  *See Common Cause*, 2018 WL 1070472, at *5-6 (rejecting similar arguments and concluding that PILF's interests were adequately represented by state officials).

First, the Eleventh Circuit has frequently held that public officials and public agencies charged with defending a law adequately represent the interests of other entities with similar goals.  *See, e.g.*, *Athens Lumber*, 690 F.2d at 1366-67 (labor union's interest in upholding campaign finance restrictions adequately represented by FEC); *Sierra Club*, 488 F.3d at 910-11 (state environmental agency's interests in upholding state's "impaired waters list" adequately represented by EPA); *cf. Chiles v. Thornburgh*, 865 F.2d 1197, 1215 (11th Cir. 1989) (homeowners association's interest adequately represented by county plaintiff); *Cobb Cty. Bd. of*

12

*Elections & Registration*, 314 F. Supp. 2d at 1312-13 (plaintiff county school board members adequately represented interests of proposed plaintiff-intervenors, two county voters, in a redistricting case).  While PILF "hypothesizes that [defendants] might have an increased incentive to compromise . . . in settlement discussions[,]" nothing in the record "casts doubt upon the will" of State Defendants to defend the legality of SB 202.  *Sierra Club*, 488 F.3d at 910.  Nor is there any evidence that State Defendants are more likely to settle.  *Id.*  To the contrary, state officials have publicly pronounced their intention to vigorously defend the statute.  *See, e.g.*, Tia Mitchell, et al., *Justice Department Sues Georgia over New Voting Law*, ATLANTA JOURNAL CONSTITUTION (June 25, 2021), https://www.ajc.com/politics/feds-sue-georgia-over-new-voting-law/BWMKLI2XJNHIVPCUKJ2HXCDEFY/ (quoting Secretary Raffensperger, Governor Kemp, and other State officials).

Second, PILF's desire to emphasize particular arguments in defense of SB 202, which it speculates State Defendants may not pursue, does not establish that its interests are inadequately represented.  As an initial matter, "there is no evidence at this early stage of the litigation that the State Defendants will not pursue [movant's] chosen argument."  *United States v. North Carolina*, 2014 WL

13

494911, at *3.  And, in any event, "as courts and treatises have explained, divergence of tactics and litigation strategy is not tantamount to divergence over the ultimate objective of the suit."  *Gumm v. Jacobs*, 812 F. App'x 944, 947 (11th Cir. 2020) (citing cases, internal quotation marks omitted); *see also Stuart*, 706 F.3d at 353 ("[T]he relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy.").  Nor can PILF establish nonfeasance by State Defendants simply by disagreeing with their decisions about what legal arguments to pursue.  *See Stuart*, 706 F.3d at 354 (holding that State Attorney General's decision to focus arguments on a particular legal doctrine "was hardly nonfeasance").  As the Fourth Circuit recently explained, allowing private entities to intervene in these circumstances, "would greatly complicate the government's job[,]" compelling it "to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation."  *Id.* at 351.

Finally, PILF's reliance on *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972), is misplaced.  PILF Br. at 9.  As the Eleventh Circuit explained in *Athens Lumber*, the proposed intervenor in *Trbovich* "bore an especially close

14

relationship to the case; he, in fact, had initiated the proceedings."  690 F.2d at

1367.  In addition, unlike PILF, he did not have the same ultimate objective as the

U.S. Secretary of Labor, who brought the lawsuit in which Mr. Trbovich sought to

intervene.  *Id.*  As in *Athens Lumber*, PILF has not demonstrated either a

particularly close relationship to this case, or that its ultimate objectives diverge

from State Defendants'.  Accordingly, PILF "may not rely on *Trbovich* to defeat

the presumption that [State Defendants] adequately represent[]" its interests.  *Id.*

PILF has failed to demonstrate that it has any interest in this litigation that is

not adequately represented by State Defendants.

## III.   PERMISSIVE INTERVENTION

### A.    Legal Standard

A court may permit intervention pursuant to Federal Rule of Civil Procedure

24(b) when a movant shows, by timely motion, that its "claim or defense . . . shares

with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).

Although permissive intervention is discretionary, a court "must consider whether

the intervention will unduly delay or prejudice the adjudication of the original

parties' rights."  Fed. R. Civ. P. 24(b)(3).  The court may deny permissive

intervention even if the required elements of Rule 24(b) are satisfied.  *Worlds*, 929

F.2d at 595.

**B.    The Court Should Not Grant Permissive Intervention**

PILF's intentions with respect to this lawsuit will "consume additional and unnecessary judicial resources" while "generat[ing] little, if any, corresponding benefit to the existing parties." *United States v. North Carolina*, 2014 WL 494911, at *5. Moreover, any legitimate interest that PILF may have in this case can be adequately asserted through *amicus curiae* participation, which the United States does not oppose. *See infra* Part IV. Accordingly, the Court should deny PILF's request for permissive intervention.

PILF's own rights are not directly at stake in this matter, and the existing defendants will adequately represent PILF's stated interest in upholding the validity of SB 202. Permitting PILF's intervention to explore other issues would only divert the attention of the Court and the parties from the real and important issues in the case, needlessly complicating and delaying resolution of the litigation. Courts have repeatedly denied permissive intervention in such situations. *See Athens Lumber*, 690 F.2d at 1367 (affirming denial of permissive intervention because proposed intervenors' interests were "remote[]" and their inclusion as an additional party would only delay proceedings); *Chiles*, 865 F.2d at 1215

(affirming denial of permissive intervention because proposed intervenors were unlikely to shed "any new light . . . on the issues to be adjudicated"); *see also Common Cause*, 2018 WL 1070472, at *6 (denying PILF's motion for permissive intervention); *Veasey v. Perry*, *supra*, slip op. at 2 (denying permissive intervention because movant's "intended contribution to this case may be accomplished without the necessity of, or burden incident to, making it a party"); *United States v. Florida*, 2012 WL 13034013, at *2 (concluding that advocacy group's "perspective and expertise" could be provided through *amicus* participation and that the groups' individual voting rights were not at stake); *United States v. North Carolina*, 2014 WL 494911, at *5 (same).[4]

---

[4] PILF refers to a case in the District of Nevada in support of its motion.  In *Luna v. Cegavske*, No. 2:17-cv-2666, 2017 WL 6512182 (D. Nev. Dec. 20, 2017), the magistrate judge granted PILF's motion for permissive intervention in a lawsuit challenging an effort to recall three Nevada state senators.  The magistrate judge rejected intervention as of right, finding that "it is questionable whether the Foundation has a significant protectable interest" in the case, *id.* at *6.  The U.S. District Court subsequently adopted the Magistrate Judge's report and recommendation, noting that no objections had been filed to that report.  *See Luna v. Cegavske*, No. 2:17-cv-2666, 2018 WL 3731084 (D. Nev. Aug. 6, 2018); 2018 U.S. Dist. LEXIS 131557.

The reasons provided for allowing permissive intervention in the *Luna* case, however—to hear arguments that the defendants might not raise themselves—can be easily addressed by allowing PILF to participate as *amicus* at appropriate junctures in this case.

To the extent PILF seeks a platform to argue that Section 2 is unconstitutional, this case, which asserts only an intentional discrimination claim, is not an appropriate forum for the argument.  PILF contends that by alleging that SB 202 violates Section 2 because it was enacted with a discriminatory purpose, the United States' complaint "extends the reach of" Section 2 "beyond permissible constitutional limits."  PILF Br. at 3; *see also id.* at 2, 8.  In essence, PILF argues that Section 2 would be unconstitutional if applied to prohibit the State from intentionally denying or abridging the right to vote on account of race.  *See* PILF Br. at 8; PILF Proposed Answer at 44 (Affirmative Defense #1) (ECF No. 11-2).

But intentional discrimination on the basis of race is precisely what the Fourteenth and Fifteenth Amendments prohibit, and enacting a statute that proscribes unconstitutional conduct is at the core of Congress' authority under the enforcement clauses of those Amendments.  *See, e.g.*, *City of Mobile v. Bolden*, 446 U.S. 55, 62-63, 66 (1980); *Greater Birmingham Ministries v. Sec'y of State*, 992 F.3d 1299, 1321 (11th Cir. 2021) (noting that Fourteenth and Fifteenth Amendments prohibit intentional racial discrimination in voting).

To prove its Section 2 intent claim, the United States must show the functional equivalent of a constitutional violation.  This is because the legal

standard for proving an intent claim under Section 2 parallels the requirements for proving intentional discrimination under the Constitution. *See, e.g., Brnovich v. Democratic Nat'l Comm.*, No. 19-1257, 2021 WL 2690267, at *9, 21 (July 1, 2021) (affirming district court's Section 2 discriminatory purpose analysis, which applied "the familiar approach outlined in *Arlington Heights v. Metropolitan Housing Development Corp.*, [429 U.S. 252 (1977)]"); *Greater Birmingham Ministries*, 992 F.3d at 1321-22 (11th Cir. 2021) (same); *Veasey v. Abbott*, 830 F.3d 216, 229-30 (5th Cir. 2016) (en banc); *N.C. Conf. of the NAACP v. McCrory*, 831 F.3d 204, 220-21 (4th Cir. 2016). Thus, in effect, PILF's argument is that prohibiting intentional racial discrimination in voting exceeds Congress' authority under the enforcement clauses of the Fourteenth and Fifteenth Amendments. This implausible theory is an unnecessary distraction from the real issues at stake in this litigation.[5]

---

[5]  To the extent PILF intends to use this lawsuit as a vehicle for discovery in furtherance of its baseless charge that the United States' enforcement action is motivated by the desire to help partisan candidates win elections, *see* PILF Answer at 44 (Affirmative Defense #2), this too is an unnecessary distraction that will needlessly expand and complicate discovery and delay timely resolution of the case. Any concerns about the partisan impact of these legal challenges to SB 202 will be ably addressed by the Republican Party Intervenors, who have intervened in these actions specifically to "protect[] [Republican] candidates, voters, and

## IV.   THE COURT NEED NOT EXCLUDE PILF FROM ALL PARTICIPATION

Although PILF has not established the prerequisites to warrant intervention of right, and permissive intervention is not appropriate, the Court has the discretion to allow interested parties to file briefs as *amicus curiae* at appropriate points in the proceedings.  *See Worlds*, 929 F.2d at 595 n.20 (noting that when a proposed intervenor "has other adequate means of asserting its rights," denial of permissive intervention was further justified); *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*, 272 F. App'x 817, 820 (11th Cir. 2008) (noting that opportunity to participate as *amicus* was an adequate alternative to intervention); *Cobb Cty. Bd. of Elections & Registration*, 314 F. Supp. 2d at 1313 (denying motion to intervene but allowing participation as *amicus*).

Conversely, if the Court does grant the motion to intervene, the United States respectfully requests that the Court impose express conditions on PILF's

---

resources."  Mem. in Support of Intervention at 2, *Ga. State Conf. of the NAACP v. Raffensperger*, 21-cv-01259, ECF No. 19-1 (Apr. 12, 2021).  *See United States v. North Carolina*, 2014 WL 494911, at *5 (concluding that advocacy group's interest in using litigation "as a vehicle to enhance its ability to collect records from the parties" weighed against permissive intervention).

participation in order to prevent it from delaying discovery and adjudication or unnecessarily burdening the existing parties.  District courts may impose any reasonable condition on a party permitted to intervene.  *See* Fed. R. Civ. P. 24, Advisory Committee Note (1966) ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

## V.    CONCLUSION

For the foregoing reasons, the Court should deny PILF's Motion to

Intervene.  The United States does not object to PILF being permitted to participate

as *amicus curiae* in this case.

Dated:  July 16, 2021


KURT R. ERSKINE                          KRISTEN CLARKE
Acting United States Attorney            Assistant Attorney General
Northern District of Georgia             Civil Rights Division
                                         PAMELA S. KARLAN
                                         Principal Deputy Assistant
                                         Attorney General


*/s/ Aileen Bell Hughes*                 */s/  Elizabeth M. Ryan*
AILEEN BELL HUGHES                       T. CHRISTIAN HERREN, JR.
Georgia Bar No. 375505                   JOHN A. RUSS IV
Assistant U.S. Attorney                  JASMYN G. RICHARDSON
Office of the United States Attorney     ERNEST A. MCFARLAND
600 U.S. Courthouse                      ELIZABETH M. RYAN
75 Ted Turner Drive, SW                  Attorneys, Voting Section
Atlanta, GA 30303                        Civil Rights Division
Phone: (404) 581-6000                    U.S. Department of Justice
Fax: (404) 581-6181                      4 Constitution Square
Aileen.bell.hughes@usdoj.gov             150 M Street NE, Room 8.923
                                         Washington, D.C. 20530
                                         Phone: (800) 253-3931
                                         Fax: (202) 307-3961
                                         john.russ@usdoj.gov
                                         elizabeth.ryan@usdoj.gov

22

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(D)**

Pursuant to Local Rule 7.1(D), Counsel certifies that the foregoing document was prepared in Times New Roman 14-point font in compliance with Local Rule 5.1(C).

*/s/ Elizabeth M. Ryan*

ELIZABETH M. RYAN
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice

## CERTIFICATE OF SERVICE

By signature below, counsel certifies that this pleading was electronically filed on July 16, 2021 using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

<i>/s/ Elizabeth M. Ryan</i>

ELIZABETH M. RYAN
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice