# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA,

     *Plaintiff*,

     v.

THE STATE OF GEORGIA, *et al.*,

     *Defendants*,

REPUBLICAN NATIONAL
COMMITTEE, *et al.*,

     *Intervenor-Defendants.*

CIVIL ACTION

FILE NO. 1:21-CV-02575-JPB

# DEFENDANTS' REPLY IN SUPPORT
# OF MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 4

    I.    Without any allegation of discriminatory results, DOJ's
        sole claim fails as a matter of law. ...................................... 4

        A.    The VRA's text and binding Supreme Court precedent
                foreclose DOJ's position. ............................................. 4

        B.    Binding Eleventh Circuit precedent also forecloses
                DOJ's position. ............................................................ 6

        C.    DOJ's argument that identical laws can be valid in one
                State and invalid in another is wrong and rife with
                potential mischief. ....................................................... 8

    II.    Even if liability could be based on purpose alone, DOJ fails
        to plead facts sufficient to state a plausible discriminatory
        purpose claim. ..................................................................... 9

        A.    DOJ's threshold arguments fail. ............................... 10

        B.    DOJ's factual allegations fail to state a claim of
                discriminatory purpose, if such a claim existed. ...................... 11

CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................ 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................ 11

*Brnovich v. Democratic Nat'l Comm.,*
  141 S. Ct. 2321 (2021) ....................................................*passim*

*Brooks v. Miller,*
  158 F.3d 1230 (11th Cir. 1998) .............................................. 6, 7

*Broward Citizens for Fair Dists. v. Broward Cty.,*
  No. 12-cv-60317, 2012 WL 1110053 (S.D. Fla. Apr. 3, 2012)..................... 11

*Butts v. City of New York,*
  779 F.2d 141 (2d Cir. 1985) .................................................. 19

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ......................................................... 7, 8

*City of Mobile v. Bolden,*
  446 U.S. 55 (1980) .......................................................... 16

*Comcast Corp. v. Nat'l Ass'n of African-Am.-Owned Media,*
  140 S. Ct. 1009 (2020) ...................................................... 12

*Common Cause/Ga. v. Billups,*
  554 F.3d 1340 (11th Cir. 2009) .............................................. 14

*Crawford v. Marion Cty. Election Bd.,*
  553 U.S. 181 (2008) ......................................................... 14

*Fusilier v. Landry,*
  963 F.3d 447 (5th Cir. 2020) ................................................. 6

*Ga. State Conf. of NAACP v. Georgia,*
  269 F. Supp. 3d 1266 (N.D. Ga. 2017)......................................... 6

*Ga. State Conf. of NAACP v. Raffensperger,*
  No. 1:21-cv-1259-JPB (N.D. Ga. July 26, 2021)............................... 10

*Greater Birmingham Ministries v. Sec'y of State for Ala.,*
  992 F.3d 1299 (11th Cir. 2021) .................................... 6, 8, 16, 19

*Johnson v. DeSoto Cty. Bd. of Comm'rs,*
   72 F.3d 1556 (11th Cir. 1996) ..................................................... 6, 7

*Lowery v. Deal,*
   850 F. Supp. 2d 1326 (N.D. Ga. 2012) ......................................... 11

*Sebelius v. Cloer,*
   569 U.S. 369 (2013) ...................................................................... 4

*Shelby Cty., Ala. v. Holder,*
   570 U.S. 529 (2013) ................................................................ 3, 16

*Simpson v. Sanderson Farms,*
   744 F.3d 702 (11th Cir. 2014) ..................................................... 13

*Thompson v. Kemp,*
   309 F. Supp. 3d 1360 (N.D. Ga. 2018) ......................................... 11

*Thornburg v. Gingles,*
   478 U.S. 30 (1986) ........................................................... 5, 19, 20

*United States v. Am. Truckers Ass'ns,*
   310 U.S. 534 (1940) ..................................................................... 21

*United States v. Jin Fuey Moy,*
   241 U.S. 394 (1916) ....................................................................... 7

*Veasey v. Abbott,*
   830 F.3d 216 (5th Cir. 2016) ......................................................... 6

## Statutes

52 U.S.C. § 10301 ............................................................................ 1, 4

SB 202 ................................................................................... *passim*

## Other Authorities

Merrick B. Garland, Opinion, *It is time for Congress to act again to
   protect the right to vote*, WASH. POST, Aug. 5, 2021 ........................ 2

The John R. Lewis Voting Rights Advancement Act of 2021, H.R. 4,
   117th Cong. (2021) ..................................................................... 2, 5

**Rules**

Fed. R. Civ. P. 8 ................................................................................................. 10

## INTRODUCTION

DOJ's opposition to Georgia's motion to dismiss removes any doubt that this lawsuit is not a serious legal challenge but a politically motivated effort to usurp the constitutional authority of Georgia's elected officials to regulate elections.

The complaint's legal deficiency is most apparent in DOJ's treatment of the question whether a violation of Section 2 of the Voting Rights Act can be established by a discriminatory purpose, even without a discriminatory effect. DOJ does not deny that its entire case—a single Section 2 claim—is built on the premise that a discriminatory purpose alone *is* sufficient. *Compare* [Doc. 38 at 5-8], *with* [Doc. 58 at 15-18]. Nor does DOJ dispute that it has not even tried to properly plead discriminatory effect. *Compare* [Doc. 38 at 9-10], *with* [Doc. 58 at 19-22]. Thus, DOJ's case stands or falls on its legal premise that proving such an effect is unnecessary. *See* [Doc. 58 at 15-22].

Yet DOJ offers no support for that premise: DOJ does not deny that the language of Section 2 expressly requires a discriminatory "result." *Id.* at 3; *see* 52 U.S.C. § 10301. Nor does DOJ offer any binding case law suggesting that this express requirement can be ignored if DOJ (or any other plaintiff) proves a discriminatory purpose. *Compare* [Doc. 38 at 5-8], *with* [Doc. 58 at 15-18].

And DOJ fails to distinguish the two binding Eleventh Circuit decisions that reject their position.

In fact, members of Congress apparently agree that there currently is no intent-only claim under Section 2. The John Lewis Voting Rights Advancement Act, H.R. 4, introduced on August 17, 2021, proposes to amend Section 2 to state that a violation is shown if an election law "has the purpose *or* will have the effect of denying or abridging the right to vote on account of race or color[.]" The John R. Lewis Voting Rights Advancement Act of 2021, H.R. 4, 117th Cong. § 3(e) (2021) (emphasis added); *see also id.* § 2(d)(1) (stating that VRA Section 2 is violated if an election law is "intended, at least in part, … to deny or abridge the right … to vote on account of race [or] color"). If Section 2 currently allowed a purpose-only claim, there would be no need to amend in that manner.

If that were not enough, just this month the Attorney General himself effectively conceded this dispositive point when he published an editorial in the *Washington Post* urging Congress to adopt a new law requiring States to prove that any proposed voting change will have "*neither* a racially discriminatory purpose nor a racially discriminatory result." Merrick B. Garland, Opinion, *It is time for Congress to act again to protect the right to vote*, WASH. POST, Aug. 5, 2021 (emphasis added). That request implicitly concedes

that no such requirement currently exists. It also makes even clearer that DOJ is asking this Court to usurp Congress' authority to decide whether a State should be subject to liability for election-law changes spurred by an alleged discriminatory purpose but without discriminatory effect.

DOJ, moreover, has doubled down on its purpose-only theory in a way that illustrates its political danger. DOJ acknowledges that most of the Georgia voting regulations it challenges here are common in other states. And DOJ counts it a virtue of its position that a regulation that is perfectly lawful when enacted by one jurisdiction can be unlawful when enacted in another—if done for an "improper" purpose. [Doc. 58 at 28 n.11]. A regime that allows particular voting laws to be stricken depending on the jurisdiction that enacts them rather than the substance of the laws themselves would reintroduce the very kind of partisan gamesmanship that *Shelby County* rejected. *Shelby Cty., Ala. v. Holder*, 570 U.S. 529, 544-45 (2013).

But even if a discriminatory purpose were legally sufficient, the complaint should still be dismissed. Rather than alleging specific facts showing *any* discriminatory intent, the complaint relies upon obvious mischaracterizations of SB 202 and its history. In doing so, DOJ also ignores the "totality of circumstances," which confirms that Georgia's election system

imposes at most "the usual burdens of voting." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021).

For these reasons, the Court should dismiss the complaint and, with it, DOJ's political attack on Georgia's election system.

## ARGUMENT

### I.   Without any allegation of discriminatory results, DOJ's sole claim fails as a matter of law.

Section 2 clearly requires allegations of discriminatory results. [Doc. 38 at 5-10]. The statutory text, the Supreme Court, and the Eleventh Circuit all say as much. And DOJ concedes that it did not include such a claim, [Doc. 58 at 15-22], even as it illustrates (apparently inadvertently) the enormous practical dangers an intent-only claim would create.

### A.   The VRA's text and binding Supreme Court precedent foreclose DOJ's position.

The text of Section 2 is clear: a law violates Section 2 if it "*results in* a denial or abridgment of the right … to vote[.]" 52 U.S.C. § 10301(a) (emphasis added). Congress added the "results in" language to *replace* Section 2's previous intent-based test. [Doc. 38 at 6-7]. In opposing Georgia's motion, DOJ goes to great lengths not to quote the full text of Section 2. [Doc. 58]. But of course, the Court must start with the text. *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). And the text is clear that Section 2 requires discriminatory results.

The Supreme Court agrees. In *Thornburg v. Gingles*, 478 U.S. 30 (1986), the Supreme Court explained that Section 2's "results in" test "repudiated" the former "intent test." *Id.* at 44. More recently, the Supreme Court confirmed that the "results in" test "establish[ed] a new" Section 2 test. *Brnovich*, 141 S. Ct. at 2332. Even the *Brnovich* dissent agreed: "The 'results in' language … tells courts that they are to focus on the law's effects. Rather than hinge liability on state officials' motives, Congress made it ride on their actions' consequences. That decision was as considered as considered comes." *Id.* at 2357 (Kagan, J., dissenting). With the current Section 2, in short, Congress enacted "a results-focused statute." *Id.* at 2358. Nothing in the majority opinion in *Brnovich* or the dissent suggests that discriminatory *intent* alone could lead to liability.[1]

DOJ mischaracterizes *Brnovich*, suggesting that the Court meant to endorse an intent-only claim because it discussed "the plaintiffs' Section 2 results claim and their Section 2 purpose claim" in "separate sections of its opinion." [Doc. 58 at 17]. But DOJ does not point to any *language* from *Brnovich* suggesting that it endorsed an intent-only claim under Section 2. *See*

---

[1] As noted earlier, Members of Congress appear to agree, as the most recently proposed amendments to Section 2 seek to add an intent-only claim to Section 2. *See* H.R. 4 §§ 2(d)(1), 3(e).

*id.* Instead, DOJ relies on the fact that the Court discussed each claim in turn. But that underscores Georgia's basic point—*Brnovich* addressed a discriminatory intent claim brought *alongside* a discriminatory results claim.[2] Nothing in *Brnovich* suggests that a Section 2 intent-only claim is viable.

## B.  Binding Eleventh Circuit precedent also forecloses DOJ's position.

Aside from *Brnovich*, the Eleventh Circuit has required discriminatory results for 25 years. That Court has held repeatedly that "discriminatory intent alone is insufficient to establish a violation of Section 2." *Johnson v. DeSoto Cty. Bd. of Comm'rs*, 72 F.3d 1556, 1561 (11th Cir. 1996) (section heading); *accord Brooks v. Miller*, 158 F.3d 1230, 1237 (11th Cir. 1998) (same). Here again, DOJ responds by ignoring the text of these decisions. Instead, DOJ attempts to limit these holdings to vote-dilution claims. [Doc. 58 at 19-20]. But the Eleventh Circuit did not limit its rulings in *Johnson* and *Brooks*. To the

---

[2] In fact, *Brnovich* also included Fourteenth and Fifteenth Amendment claims, which DOJ cannot bring against Georgia. 141 S. Ct. at 2334. Indeed, many Section 2 cases that discuss intentional discrimination are cases where a Section 2 results claim is paired with intentional discrimination claims under the Fourteenth and Fifteenth Amendments. *See, e.g.*, *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1329 (11th Cir. 2021) (*GBM*); *Veasey v. Abbott*, 830 F.3d 216, 229 (5th Cir. 2016); *Fusilier v. Landry*, 963 F.3d 447, 463 (5th Cir. 2020); *but see Ga. State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266, 1277 (N.D. Ga. 2017) (three-judge court) (finding Section 2 authorizes either intent or effects claims).

contrary, in announcing the rule, *Johnson* repeatedly addressed Section 2 generally. *Johnson*, 72 F.3d at 1563 (The "statutory language" of Section 2 "admits of no exception for situations in which there is discriminatory intent but no discriminatory results."); *id.* (explaining that the Senate "report does not require, or even allow, us to hold that intent alone is sufficient under § 2"). The same is true of *Brooks*. 158 F.3d at 1237 ("[D]iscriminatory intent alone, in the absence of a showing of discriminatory effect, is insufficient to establish a violation of § 2."). However different a vote-dilution claim is from a vote-denial claim, each arises under Section 2 and both *Johnson* and *Brooks* require a plaintiff to allege discriminatory results.

Moreover, even if these cases or the statutory text were at all unclear on this point, the saving-construction canon of interpretation requires courts to interpret statutes, "if fairly possible, so as to avoid not only the conclusion that [they are] unconstitutional, but also grave doubts upon that score." *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916). The VRA, enacted under Congress's remedial Fourteenth and Fifteenth Amendment enforcement power, is naturally limited by that power. *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). And there must be "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 520. DOJ's interpretation of Section 2 would run afoul of those limits.

Indeed, in the Eleventh Circuit, plaintiffs must "establish both" a discriminatory "intent *and* effect" for claims alleging violations of either the Equal Protection Clause or the Fifteenth Amendment to survive. *GBM*, 992 F.3d at 1321. And because, under *Boerne*, Congress cannot expand those rights by creating a cause of action for parties alleging only discriminatory intent, this Court should reject DOJ's interpretation which—at least—raises these questions.

As Georgia established (at [Doc. 38 at 5-10]), DOJ's failure to include a discriminatory results claim dooms its complaint right out of the gate. And DOJ does not contest that its complaint must be dismissed if the Court agrees. Accordingly, the Court should follow the text of Section 2, along with binding precedent, and dismiss DOJ's complaint.

## C. DOJ's argument that identical laws can be valid in one State and invalid in another is wrong and rife with potential mischief.

Finally, DOJ's own brief powerfully demonstrates the danger of its position that VRA liability can be based on discriminatory intent alone. In its motion, Georgia showed that SB 202 implemented many of the same voting rules that are in place in states across the country. [Doc. 38 at 20-24]. Yet DOJ has not brought Section 2 claims against those other states, despite having the same voting practices that are, according to the President, "Jim Crow in the

21st century." *Id.* at 20. To the contrary, DOJ acknowledges its double standard. [Doc. 58 at 28 n.11]. According to DOJ, the same law, having the same effect, can be unlawful in one state but not in another. *Id.*

Such a sweeping proposition leaves states at serious risk of transparently political interference under the guise of the VRA. Apparently, a state that historically elects Democrats as its leaders may enact commonsense voting regulations, but states led by Republicans may not enact the very same laws—or at least risk inviting burdensome litigation by DOJ if they do. A more potent prescription for partisan gamesmanship can hardly be imagined. The Court should reject DOJ's legal theory and, with it, the politically motivated double standard that it would facilitate. Because DOJ's entire complaint depends on the viability of that theory, the complaint should be dismissed.

## II. Even if liability could be based on purpose alone, DOJ fails to plead facts sufficient to state a plausible discriminatory purpose claim.

Based on the analysis above, this Court need not even address the question of what might be necessary to state a discriminatory purpose-only claim, if such a claim existed. But even so, DOJ's opposition fails to rebut Georgia's showing that DOJ's allegations are insufficient to establish a discriminatory purpose. To establish such a purpose, a plaintiff must allege that "the legislature as a whole" acted with a discriminatory purpose.

*Brnovich*, 141 S. Ct. at 2350. The "touchstone" for this analysis is whether a state's "entire system of voting" is "equally open." *Id.* at 2339, 2341. As DOJ admits, "[a]n atomized assessment" of a voting law "is improper." Stmt. of Interest at 9, *Ga. State Conf. of NAACP v. Raffensperger*, No. 1:21-cv-1259-JPB (N.D. Ga. July 26, 2021). And none of DOJ's specific attempts to rescue their allegations of improper purpose hold water.

### A.   DOJ's threshold arguments fail.

At the threshold, DOJ argues that it need not allege facts showing that the "'legislature as a whole' was motivated by a discriminatory purpose." [Doc. 58 at 22]. Rather, DOJ suggests that the Supreme Court used this phrase in *Brnovich* as "shorthand" to discuss the *Arlington Heights* framework. [Doc. 58 at 22]. But *Brnovich* did not equivocate: Only "the legislature as a whole"—not a bill's sponsor or an individual member—can supply the "racial motives" necessary for a Section 2 vote-denial claim. 141 S. Ct. at 2350. DOJ's assertion that the Court nonetheless meant something different is belied by the Court's actual language.

DOJ also repeatedly argues that this Court should deny Georgia's motion simply because "voting rights claims are ill-suited for resolution through motions to dismiss." [Doc. 58 at 15]. But not even DOJ is insulated from Rule 8's pleading standards or the decisions applying them. Fed. R. Civ. P. 8;

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Unsurprisingly, federal courts routinely dismiss Section 2 claims.[3] When any plaintiff, even the United States, fails to allege sufficient facts to show a violation of Section 2, the complaint should be dismissed, irrespective of the plaintiff's wish to engage in protracted, expensive discovery.

### B.   DOJ's factual allegations fail to state a claim of discriminatory purpose, if such a claim existed.

On the merits, DOJ argues that it has alleged sufficient facts to plead a plausible discriminatory purpose claim. [Doc. 58 at 22-40]. But DOJ did not allege *any* discriminatory act or statement on the part of any member of the General Assembly during SB 202's passage. [Doc. 38 at 11]. Now, in its opposition, DOJ strings together five sets of allegations about SB 202's application and history, hoping the Court will manufacture a discriminatory purpose that DOJ did not plausibly plead. [Doc. 58 at 22-40]. The Supreme Court has already rejected this approach to Section 2 claims, explaining that such claims require a court to consider a state's "entire system of voting" to determine if it is "equally open." *Brnovich*, 141 S. Ct. at 2340, 2341. The Court

---

[3] *See, e.g.*, *Thompson v. Kemp,* 309 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018); *Lowery v. Deal*, 850 F. Supp. 2d 1326, 1336 (N.D. Ga. 2012); *Broward Citizens for Fair Dists. v. Broward Cty.*, No. 12-cv-60317, 2012 WL 1110053, at *7 (S.D. Fla. Apr. 3, 2012).

must "tak[e] into account the other available means" Georgia provides to vote. *Id.* at 2339. The Court should reject DOJ's attempt to cherry-pick a handful of provisions in SB 202 to support its discriminatory-purpose claim.[4]

1. DOJ begins by arguing that the challenged provisions will have a discriminatory impact on Black voters. [Doc. 58 at 23-28]. This idea is in square conflict with DOJ's decision not to claim that SB 202 has a discriminatory result. *See supra* Part I. Moreover, this argument fails because none of DOJ's allegations shows a discriminatory impact.

For instance, DOJ argues that SB 202 will disproportionately impact Black voters because they are more likely to request absentee ballots fewer than 11 days before an election, as provided for in SB 202. [Doc. 58 at 24]. From

---

[4] By explaining the deficiencies of these factual allegations, Georgia is not raising "factual disputes regarding the allegations," as DOJ suggests. [Doc. 58 at 2]. Rather, Georgia demonstrates that the factual allegations do not support DOJ's arguments and, moreover, they overlook the full context of SB 202.

To be sure, DOJ's burden at the pleading stage is different than at trial. But the legal requirements for a Section 2 claim "remain constant through the life of a lawsuit." *Comcast Corp. v. Nat'l Ass'n of African-Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit," courts "ask what the plaintiff must prove in the trial[.]" *Id. Brnovich* clarifies the law for a Section 2 claim, and thus DOJ must plead sufficient allegations to satisfy *Brnovich*'s requirements.

this, DOJ speculates, they will be unable to request absentee ballots in time to vote. *Id.*

But the complaint does not support this argument. DOJ only alleges that during the recent pandemic-affected election cycles, Black voters were more likely to request ballots "between ten and four days before Election Day." [Doc. 1 ¶¶ 58-59]. DOJ does not address any practice before that unusual election year. Moreover, DOJ ignores the Supreme Court's direction to allege facts showing *how much* more likely Black voters were to request ballots during the specified period. *See Brnovich*, 141 S. Ct. at 2339 ("a meaningful comparison is necessary"). DOJ also fails to allege that Black voters are unable or unlikely to adjust their practices to request the ballot 11 days before an election. Instead, DOJ assumes that they will not be able to do so.[5] Such speculation fails to support a discriminatory purpose claim. *Simpson v. Sanderson Farms*, 744 F.3d 702, 712 (11th Cir. 2014) (noting that "speculation does not state a claim").

---

[5] Georgia rejects DOJ's paternalistic view that voters of certain races are somehow less capable of determining how to cast a ballot. Such soft bigotry of low expectations has no place in this country. Just as Black voters have been able to request absentee ballots under the current system [Doc. 1 ¶ 22], Georgia is confident in their ability (like all voters) to do so under the new system.

The same is true of DOJ's argument that "Black voters are less likely to have the required ID to request an absentee ballot." [Doc. 58 at 24]. Multiple courts have rejected similar arguments challenging ID requirements for voting. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) (op. of Stevens, J.); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1345 (11th Cir. 2009). Moreover, DOJ's argument mischaracterizes SB 202's ID provision: DOJ alleges that "Black Georgians are less likely to possess" the ID "number needed to request an absentee ballot than white voters." [Doc. 1 ¶ 54]. But the ID number is just *one* method for a voter to verify his or her identity when requesting an absentee ballot. DOJ does not allege that Black voters are less likely to have a utility bill, bank statement, or one of the other documents that may be used to verify an applicant's identity. SB 202 at 64:1617-19. DOJ has thus failed to allege *any* facts showing that Black voters will be less likely to have the requisite documentation to apply for an absentee ballot.

DOJ next argues that Black voters are more likely to "cast late ballots," and thus are somehow "particularly harmed by the limitations on drop-boxes." [Doc. 58 at 24]. This argument strains logic. SB 202 does not change the end of the advance voting period—it still closes the Friday before Election Day, just as it did before SB 202. SB 202 at 59:1496. And the complaint does not allege

that Black voters are unable to submit their ballots in a drop box or through in-person advance voting by the Friday before Election Day.[6]

With respect to SB 202's prohibition on approaching voters in line to offer them something of value, DOJ again comes up short. [Doc. 58 at 24]. Without explanation, DOJ argues that this provision will disproportionately affect Black voters. *See id*. But DOJ does not allege that Black voters are unable to bring their own food or drinks to the polls. Nor does DOJ allege that Black voters are unable to access water at a polling location, as SB 202 expressly permits. SB 202 at 74:1888-89.

More fundamentally, DOJ misunderstands this portion of SB 202. SB 202 prevents anyone from approaching voters while they are waiting in line within 150 feet of a polling location. SB 202 at 73:1878-79. But it certainly does not take "hours" to move through the final 150 feet of a voting line. [Doc. 58 at 37]. Rather, DOJ must be discussing the voting lines *beyond* the last 150 feet. For that portion of the line, SB 202 allows anyone—including "Black-led organizations" [Doc. 58 at 37]—to set up tables with food and drinks within 25 feet of the line, provided they are giving away food and drinks to everyone, not

---

[6] DOJ's focus on drop boxes is misplaced for another reason. In addition to drop boxes, every voter may submit an absentee ballot by placing it in a mailbox or delivering it to an elections office through Election Day.

limiting it to only voters or offering it in return for voting. SB 202 at 74:1881. In other words, for almost the entire voting line, community organizations may hand out food and drinks, provided they set-up approximately ten yards away from the line (again, provided they are also complying with longstanding laws prohibiting giving away anything of value in return for voting). DOJ's mischaracterization of this provision does not support a Section 2 claim.

2.  DOJ next argues that historical background shows a discriminatory purpose behind SB 202. [Doc. 58 at 29-32]. Once again, DOJ ignores binding precedent. The Supreme Court has rejected this argument, noting that the VRA, like the Constitution, is not "designed to punish for the past." *Shelby Cty.*, 570 U.S. at 553. So has the Eleventh Circuit: a state's "racist history" is too remote to prevent it from "enacting otherwise constitutional laws about voting." *GBM*, 992 F.3d at 1325. "Surely, 'past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful.'" *Id.* (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980)). While DOJ may want to "punish" Georgia for its history, binding precedent precludes it from doing so. And under that precedent, allegations about Georgia's distant past are irrelevant.

DOJ's focus on more recent history also fails. DOJ discusses the "campaign to overturn the November 2020 election results, violent threats

16

against election workers, and countless unsuccessful lawsuits, all premised on unfounded accusations of fraud." [Doc. 58 at 30]. Because SB 202 was passed shortly after these events, DOJ simply assumes a discriminatory purpose, without alleging any *actual* connection. But assumptions are not facts. DOJ does not allege that anyone involved in passing SB 202 was involved in a "campaign to overturn the November 2020 election results" or in making threats against election workers. *Id.* These allegations thus fail to support any claim of a discriminatory purpose behind SB 202.

Amazingly, DOJ also criticizes Georgia legislators for their recent efforts to secure future elections against potential fraud and increase confidence in Georgia's election results. As DOJ sees it, because there was no "widespread fraud in Georgia" that "required enacting the provisions in SB 202," these legislators must have been using fraud as a pretext for discrimination. Such accusations are offensive and false. The Supreme Court recently confirmed that voter fraud is a real concern. *Brnovich*, 141 S. Ct. at 2350. The Carter-Baker Commission years ago concluded likewise. *Id.* at 2347. And as Georgia already demonstrated, voter fraud *has* occurred in Georgia. [Doc. 38 at 17].

Thus, DOJ's focus on Georgia's history—whether recent or distant—fails to support its Section 2 discriminatory purpose claim.[7]

3. DOJ also argues that a discriminatory purpose may be inferred from the General Assembly departing from its normal legislative procedure in passing SB 202. [Doc. 58 at 32-34]. The problem for DOJ, however, is that it failed to identify any actual procedural deviations. [Doc. 1 ¶ 157]. DOJ discusses committee assignments, the length of the bill, and the timeline of SB 202's passage. *Id.* But DOJ omits any allegation demonstrating that this process was out of the ordinary—much less *so far* out of the ordinary to show an ulterior motive. Moreover, this argument overlooks the facts. As DOJ acknowledges, SB 202 was the product of hearings, testimony, and floor debates. [Doc. 1 ¶¶ 110, 116, 118, 164]. Given those facts, which DOJ acknowledges, SB 202's legislative process cannot support DOJ's claim.

4. DOJ next argues that SB 202 must be the product of discriminatory motives because it had a foreseeable discriminatory impact. [Doc. 58 at 35-38]. Here again, DOJ brushes aside binding precedent. The Eleventh Circuit has

---

[7] Georgia already demonstrated that concerns about voter fraud were just one of several purposes behind SB 202. [Doc. 38 at 16]. DOJ and the District of Columbia are thus misguided in their narrow focus on the adequacy of Georgia's concerns about voter fraud. [Doc. 58 at 30]; [Doc. 63-1 at 3].

refused to infer "foreknowledge" of disparate impacts where the legislature's proffered justifications were legitimate. *GBM,* 992 F.3d at 1327. Similarly, "[t]he Supreme Court has … repeatedly cautioned … against placing too much emphasis on the contemporaneous views of a bill's opponents" as "speculations and accusations of … opponents simply do not support an inference of the kind of racial animus discussed in … *Arlington Heights.*" *Butts v. City of New York*, 779 F.2d 141, 147 (2d Cir. 1985).

While it is certainly true that SB 202 faced opposition, as almost all legislation does, members of the General Assembly received information, considered it, and voted. While DOJ may believe that a discriminatory purpose exists when individuals and organizations oppose a voting bill, the Supreme Court and the Eleventh Circuit reject that view. So once again, DOJ's argument crumbles under the weight of binding precedent.[8]

5.   Finally, DOJ asks the Court to infer a discriminatory purpose based on the "totality of the circumstances." [Doc. 58 at 38-40]. This argument misses the mark for several reasons. DOJ relies heavily on the *Gingles* factors, which the Supreme Court recently held were largely "inapplicable" to "time, place, or

---

[8] Moreover, DOJ's suggestion here that there was a foreseeable discriminatory impact from SB 202 is undercut by the fact that DOJ has not identified any racially discriminatory impact from SB 202. *See supra* Part II.B.1.

manner" regulations like those at issue here. *Brnovich*, 141 S. Ct. at 2340.[9] And for those *Gingles* factors that may be applicable, their "relevance" is "much less direct" outside of the vote-dilution context. *Id*.

Rather than relying on such "inapplicable" and "less" "relevan[t]" factors, DOJ and the Court must consider Georgia's "entire system," which shows that its election laws are among the most generous in the country for absentee and early voting. Georgia uses automatic voter registration, allows multiple options for voting, and provides multiple options for returning absentee ballots. Yet DOJ asks the Court again to ignore binding precedent and to review isolated provisions of SB 202 stripped of their context and the totality of circumstances. *Id*. at 2339 ("any burden imposed on voters who choose one of the available options cannot be evaluated without also taking into account the other available means").

Moreover, when viewing SB 202 in its entirety, the statute's stated purpose is helpful guidance. [Doc. 38 at 14-17]. There "is, of course, no more persuasive evidence of the purpose of a statute." *United States v. Am. Truckers*

---

[9] DOJ criticizes Georgia for relying on vote-dilution cases when arguing that there is no intent-only claim permitted under Section 2. [Doc. 58 at 20]. But ironically, for this portion of its opposition, DOJ relies on the *Gingles* factors, which "grew out of and were designed for use in vote-dilution cases." *Brnovich*, 141 S. Ct. at 2340.

*Ass'ns*, 310 U.S. 534, 543 (1940). Contrary to suggestions from DOJ [Doc. 58 at 41] and the District of Columbia [Doc. 63-1 at 4-5], Georgia does not propose blind fealty to SB 202's stated purpose; a stated purpose may be disregarded when "plainly at variance with the policy of the legislation as a whole." [Doc. 38 at 15] (citing *Am. Truckers*, 310 U.S. at 543). But here, SB 202's stated purposes are instructive, as each challenged provision logically furthers the purposes identified. [Doc. 38 at 15] (discussing the challenged provisions and SB 202's purposes). SB 202's stated purposes certainly inform the "totality of circumstances." And Georgia's election system provides ample ways to vote; DOJ's implausible *assertions* to the contrary cannot state a Section 2 claim.

When discussing the totality of circumstances surrounding SB 202, DOJ would have this Court believe that SB 202 restricted Georgians' ability to vote at every turn. For instance, DOJ suggests that SB 202 imposed "draconian cuts to drop boxes[.]" [Doc. 58 at 35]. Similarly, DOJ suggests that SB 202 limited the types of ID that would be accepted with an absentee ballot application. *Id.* at 26. DOJ also suggests that SB 202 suddenly prevents Georgia officials from mailing absentee ballots "to all voters[.]" *Id.*

None of that is true, and DOJ cites no reason to believe any of it. While voting by drop boxes was permitted as part of the State's "pandemic response[,]" "[t]he drop boxes created by rule no longer existed in Georgia law

21

when the emergency rules that created them expired." SB 202 at 5:114-15. Thus, far from "draconian cuts," SB 202 statutorily required drop boxes for the first time. Similarly, SB 202 replaced the "subjective signature-matching requirements," which have been challenged by Republicans and Democrats, with the ID requirements, which, as noted earlier, allow for many forms of ID beyond a driver's license. *Id.* at 4:73-75, 43:1087-1104. Finally, Georgia's election laws did not previously contemplate mailing absentee ballots to all voters; that was simply done during one pandemic-affected election. [Doc. 58 at 7].

DOJ fails to acknowledge any of these facts, offering instead fiction and misleading rhetoric. But a simple review of SB 202 and DOJ's allegations shows that DOJ mistakenly compares SB 202 to COVID-19 emergency provisions. As explained, the voting laws in place previously, not the 2020 emergency provisions, provide the relevant baseline. Once viewed properly, the insufficiency of DOJ's factual allegations becomes readily apparent.

## CONCLUSION

DOJ has failed to plead the fundamental requirements of a Section 2 claim. It failed to allege discriminatory results, the most essential element of its sole cause of action. And even if discriminatory purpose, without more, were a sufficient basis for such a claim, DOJ failed to allege sufficient facts to

plausibly plead such a purpose. At each turn, moreover, DOJ ignores the entirety of Georgia's election system and urges the Court to ignore binding precedent, including the text of Section 2 and controlling decisions of the Supreme Court and the Eleventh Circuit. For all these reasons, the Court should dismiss DOJ's complaint.

Respectfully submitted this 18th day of August, 2021.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Special Assistant Attorney General
Erik Jaffe*
H. Christopher Bartolomucci*
Brian J. Field*
Riddhi Dasgupta*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060

gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
Bryan F. Jacoutot
Georgia Bar No. 668272
Loree Anne Paradise
Georgia Bar No. 382202
**Taylor English Duma LLP**
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: (678) 336-7249
btyson@taylorenglish.com

*Counsel for Defendants*

# CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Defendants' Reply in Support of Motion to Dismiss Complaint has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Gene C. Schaerr*
Gene C. Schaerr