UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF GEORGIA, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 1:21-cv-02575-JPB |

# **ORDER**

Before the Court are the following motions:

1. Defendants the State of Georgia, the Georgia State Election Board and Brad Raffensperger's (collectively "State Defendants") Motion to Dismiss Complaint (ECF No. 38); and

2. Defendants Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee and Georgia Republican Party, Inc.'s (collectively "Intervenor Defendants") Motion to Dismiss or Alternatively for Summary Judgment (ECF No. 39).[1]

Having fully considered the papers filed therewith, the Court finds as follows:

---

[1] State Defendants and Intervenor Defendants are collectively referred to as "Defendants."

I.   **BACKGROUND**

Plaintiff the United States of America (the "United States") filed this action seeking injunctive and declaratory relief with respect to certain provisions of Georgia Senate Bill 202 ("SB 202"). Governor Brian Kemp signed SB 202 into law on March 25, 2021, and the challenged provisions regulate election-related processes and activities ranging from absentee ballot voting to out-of-precinct in-person voting. The United States alleges that the challenged provisions violate § 2 of the Voting Rights Act ("VRA").

II.   **DISCUSSION**

Defendants seek dismissal of the Complaint on the grounds that it fails to state a claim. Intervenor Defendants also raise the issue of the timeliness of their motion to dismiss. The Court will address the timing issue first.

A.   **Timeliness of Intervenor Defendants' Motion to Dismiss**

In accordance with Federal Rule of Civil Procedure 24(c), Intervenor Defendants submitted a proposed answer to the Complaint at the time they sought permission to intervene. When the Court granted Intervenor Defendants' motion to intervene, their proposed answer became part of the record. As such, Intervenor Defendants' instant Rule 12(b)(6) motion to dismiss, which they filed after the answer became part of the record, is technically untimely. *See Byrne v. Nezhat*,

261 F.3d 1075, 1093, n.35 (11th Cir. 2001) (stating that the defendant's motion to dismiss pursuant to Rule 12(b)(6), which was filed after the defendant answered the complaint, was "in effect a nullity"), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co*, 553 U.S. 639 (2008).

Intervenor Defendants have not cited, and the Court is not aware of, any legal authority that directly addresses whether the Court has discretion to consider a late-filed motion to dismiss in the unique circumstances of intervention. Intervenor Defendants, in "an abundance of caution," alternatively styled their motion as one for summary judgment, which can be filed at any time. Intervenor Defs.' Br. 3, ECF No. 39-1. However, Intervenor Defendants did not comply with certain requirements for filing a motion for summary judgment, such as providing a statement of facts. *See* Fed. R. Civ. P. 56(c); N.D. Ga. Civ. R. 56.1(B)(1). Instead, they ask the Court to evaluate the motion for summary judgment under the motion to dismiss standard. Intervenor Defs.' Br. 3, ECF No. 39-1.

The United States urges the Court not to consider Intervenor Defendants' motion to dismiss because it is untimely. The United States also contends that the alternate motion for summary judgment is premature because discovery is currently stayed. Gov't's Resp. Br. 2 n.2, ECF No. 58.

The central issue here is one of timing. Even if the Court declined to consider Intervenor Defendants' motion at this time, Intervenor Defendants can simply re-file the same motion once State Defendants answer the Complaint and seek judgment on the pleadings, pursuant to Rule 12(c). Because motions to dismiss and motions for judgment on the pleadings are evaluated under the same standard, efficiency considerations militate in favor of considering the merits of Intervenor Defendants' motion to dismiss now. *See Brown v. Wells Fargo Bank, N.A.*, No. 3:17-cv-00044-TCB-RGV, 2018 WL 6694897, at *4 (N.D. Ga. Oct. 11, 2018) (stating that the Rule 12(b)(6) and 12(c) standards are the same, with the key difference between the two rules being the time of filing), *report and recommendation adopted*, No. 3:17-CV-44-TCB, 2018 WL 6694921 (N.D. Ga. Dec. 3, 2018). It also serves no purpose to delay considering Intervenor Defendants' motion to dismiss in this case when the Court is concurrently resolving similar motions filed by Intervenor Defendants in related voting cases where the timing issue does not exist.

For these reasons, the Court will decide Intervenor Defendants' motion to dismiss at this time.

### B.     Failure to State a Claim

The Court now turns to Defendants' arguments that the Complaint fails to state a claim upon which relief may be granted.

In evaluating a motion to dismiss under Rule 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."[2]  *Traylor v. P'ship Title Co.*, 491 F. App'x 988, 989 (11th Cir. 2012).  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a complaint does not suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement'" (alteration omitted) (quoting *Twombly*, 550 U.S. at 557)).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "This standard does not

---

[2] A court is limited to reviewing what is alleged "'within the four corners of the complaint.'"  *Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir. 2016) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)).  If the court accepts matters outside the complaint, it "must convert the motion to dismiss into one for summary judgment."  *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985).

require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co.*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *Traylor*, 491 F. App'x at 990 (quoting *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010)).

### Count I (discriminatory purpose under § 2 of the VRA)

The United States contends that SB 202 violates § 2 of the VRA because the challenged provisions "were adopted with the purpose of denying or abridging Black citizens' equal access to the political process." Compl. ¶ 161, ECF No. 1. Among other allegations, the United States asserts that:

(i) "SB 202's passage followed a series of historic wins by multiple Black-preferred candidates, a significant and well-publicized rise in Black political mobilization and voting strength, shifting racial demographics in the [s]tate . . . and changes to the [s]tate's typical election procedures that resulted from the ongoing pandemic";

(ii) "race continues to be a significant and, oftentimes, decisive factor in the [s]tate['s] electoral process";

(iii) the "history of official racial discrimination against Black citizens in Georgia with regard to voting is longstanding, well-documented, and recognized by Federal courts";

(iv) the "white share of the [Georgia] electorate has dropped in the past decade, from 66.3 percent in 2010 to . . . 58.2 percent in 2020";

(v) "[i]n November 2020, 29.27 percent of Black voters cast an absentee ballot, compared to 23.88 percent of white voters";

(vi) SB 202 was passed through an irregular process that included referring the bill to a "stand-alone, special committee on election integrity" chaired by Representative Barry Fleming;

(vii) Representative Fleming wrote a 2020 op-ed for a Georgia newspaper comparing the "'always-suspect absentee balloting process' to the 'shady part of town down near the docks you do not want to wander into because the chance of being shanghaied is significant'";

(viii) minority voters in Georgia experience worse socioeconomic indicators as compared to non-minority voters, including lower per capita income, lower educational attainment, higher unemployment and greater housing instability; and

(ix) "[d]ue to disparities in social and economic conditions caused by historical and ongoing discrimination, . . . Black voters will be disproportionately burdened by the challenged provisions of SB 202."

*Id.* ¶¶ 20, 23-29, 25, 30, 33, 81, 113-14, 136, 157, 162.

State Defendants argue that the Complaint should be dismissed because § 2 of the VRA does not permit a discriminatory purpose claim without a corresponding showing of disparate results. *See* State Defs.' Br. 5-10, ECF No. 38. They also attack the merits and relevance of the United States' allegations and assert that even if a discriminatory purpose claim were authorized under § 2, the United States has failed to allege sufficient facts to support the claim. *Id*. at 10-22. In essence, State Defendants conclude that the challenged provisions do not violate the law because they further legitimate state interests and represent only "the usual burdens of voting." *Id*. at 4.

Intervenor Defendants similarly dispute the validity of the United States' allegations and contend that the Court should instead focus on the legislative findings underlying SB 202, which they assert are "the only reliable evidence of *the legislature's* purposes." Intervenor Defs.' Br. 7, ECF No. 39-1. In their view, those findings prove that SB 202 was not enacted with discriminatory intent. They argue that, at worst, the legislature was driven by the permissible purpose of securing partisan advantage. *Id*. at 15-16.

In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, the Supreme Court of the United States identified a non-exhaustive list of factors that courts can use to evaluate whether government action was undertaken

8

with discriminatory intent. 429 U.S. 252, 267-68 (1977). These include the "historical background of the decision"; the "specific sequence of events leading up to the challenged decision"; "[d]epartures from the normal procedural sequence" in taking the action; "[t]he legislative or administrative history," including "contemporary statements by members of the decisionmaking body"; and whether the "impact of the official action . . . bears more heavily on one race than another."³ *Id*.

Because the aforementioned allegations in the Complaint are consistent with the *Arlington Heights* factors and otherwise bear on the issue of intentional discrimination, the Court finds that the United States has stated a plausible discriminatory purpose claim.⁴ *See Chisom v. Roemer*, 501 U.S. 380, 394 n.21

---

³ The Supreme Court recently noted in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2348 (2021), that the district court applied the "familiar approach outlined in *Arlington Heights*" for evaluating discriminatory intent or purpose claims. This language reaffirms the practice of federal courts relying on the *Arlington Heights* framework to evaluate VRA § 2 discriminatory purpose claims.

⁴ Citing *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018), Intervenor Defendants argue that a presumption of good faith applies to the legislature's actions, and a history of voting discrimination cannot condemn all later actions by the state. Intervenor Defs.' Br. 5, ECF No. 39-1. However, *Abbott* does not address whether the presumption of good faith applies in vote denial cases. And even if the presumption applies, it is not a shield that requires automatic dismissal of discrimination claims at the pleading stage. *See Abbott*, 138 S. Ct. at 2324-25. The Court must analyze the United States' allegations under applicable law and

(1991) (stating that in order to establish a VRA § 2 violation, a plaintiff "must either prove [discriminatory] intent, or, alternatively, must show that the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process").  At the motion to dismiss stage, the United States is not required to establish "a significant probability that the facts are true," *Burch*, 2014 WL 12543887, at *2, and only has to state facts sufficient to "nudge" its claims "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570.  It has done so here.

      Alternately, the Complaint satisfies the "key requirement" for stating a VRA § 2 claim, which is an allegation that under the "totality of the circumstances," the process of voting is not equally open to minority groups.  *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2337-38 (2021); *see also* 52 U.S.C. § 10301(b) (stating that a violation of § 2 of the VRA is established "if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the [s]tate or political subdivision are not equally open to participation by members of a [protected] class"); *Greater Birmingham Ministries v. Sec'y of*

---

consider the historical context as "'one evidentiary source.'"  *Id.* at 2325 (citation omitted).

*State for Ala.*, 992 F.3d 1299, 1329 (11th Cir. 2021) (stating that "in looking into the totality of the circumstances, if 'members of a protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice,' a violation [of § 2] is shown" (citation omitted)).  As set forth above, the Complaint alleges that factors such as socio-economic disparities that persist in the Black community, racially polarized voting in elections and Georgia's history of voting-related discrimination interact with the challenged provisions of SB 202 to cause Black voters to have less opportunity than other members of the electorate to participate in the political process and elect representatives of their choice.  These allegations have "a logical bearing on whether voting is 'equally open' and affords equal 'opportunity'" to minority voters.  *Brnovich*, 141 S. Ct. at 2338.  They are also relevant to evaluating the totality of the circumstances.  *See Thornburg v. Gingles*, 478 U.S. 30, 36-37 (1986) (identifying similar factors).[5]  Taking the allegations as true and construing

---

[5] The Supreme Court's opinion in *Brnovich* called into question the usefulness of some of the *Gingles* factors in evaluating a vote denial claim under § 2 of the VRA and offered alternate factors that a court may consider.  *Brnovich*, 141 S. Ct. at 2340.  However, as discussed herein, the Supreme Court was careful to define the alternate factors it offered as mere guideposts.  *See id*. at 2336.  Because this list of guideposts is neither exhaustive nor prescriptive, *Brnovich* does not require the United States to plead any specific set of factors.  *See id*.; Fed. R. Civ. P. 8(a)(2) (requiring a plaintiff to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief").

them in the light most favorable to the United States, the Court finds that they are sufficient to state a plausible claim for relief under the totality of the circumstances framework.

While Defendants' arguments regarding the burden on voters, Georgia's voting system as a whole and Georgia's underlying interests in enacting SB 202 will likely be relevant to the analysis of the United States' claims at a later stage of this case, those contentions go to the merits of the claims and not to the question of whether the United States has asserted a plausible claim for relief.  The resolution of those points also requires an inquiry into facts not alleged in the Complaint. Therefore, Defendants' arguments are not appropriate at the motion to dismiss stage.

Additionally, contrary to Defendants' contentions that *Brnovich* established certain requirements that the United States failed to meet here, the Supreme Court in that case expressly "decline[d] . . . to announce a test to govern all VRA § 2 claims" involving time, place or manner voting restrictions.  141 S. Ct. at 2336. The Supreme Court explained that *Brnovich* was its "first foray" into deciding this type of claim and therefore found it "sufficient for present purposes to identify certain ***guideposts***" that led to its decision rather than to mandate a test that must be satisfied in all circumstances.  *Id*. (emphasis added).  Thus, while the language

in *Brnovich* could portend future requirements to state or prove a § 2 time, place or manner claim, it should not be interpreted as currently setting forth pleading requirements that the United States must fulfill in this case.[6]

Likewise, it is true that the *Brnovich* opinion discusses the legislators' intent in passing the challenged statute, but that analysis does not support Defendants' position that *Brnovich* now requires plaintiffs in cases such as this one to allege that the legislature as a whole acted with discriminatory intent. The Supreme Court's discussion of intent in that case occurred in the course of its review of whether the district court's interpretation of the evidence of discrimination was "permissible" under the clearly erroneous standard of review. *Id*. at 2349. The district court found no indication that the legislature "as a whole" was motivated by race, despite evidence in the record that a video reflecting a racial appeal played a role in the legislature's actions. *Id*. at 2349-50. The Supreme Court concluded that the district court's finding was not clearly erroneous. *Id*. When viewed in

---

[6] *Compare Guideline*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/guideline (last visited Dec. 6, 2021) ("an indication or outline of policy or conduct") *with Requirement*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/requirement (last visited Dec. 6, 2021) ("something essential to the existence or occurrence of something else"). "Guideline" and "Guidepost" are equivalent in the Merriam-Webster dictionary.

13

context, this finding does not establish a new test to state a VRA § 2 discrimination claim, especially in light of the Supreme Court's express disavowal of doing so.

State Defendants also cite the opinion in *Johnson v. DeSoto County Board of Commissioners*, 72 F.3d 1556 (11th Cir. 1996), out of context. They argue that *Desoto County* requires the United States to allege disparate results arising from SB 202 in order to state a claim for relief. However, that opinion is distinguishable from the circumstances at bar because it involved a vote ***dilution*** case, in which the county's districting method was challenged on the grounds that it diluted the ability of minority voters to affect the outcome of school board elections. *See id.* at 1558. A plaintiff in a vote dilution case must show disparate results because "[u]nless minority voters possess the potential to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by that structure or practice." *Gingles*, 478 U.S. at 50 n.17; *see also Desoto Cnty.*, 72 F.3d at 1561-62 (explaining that the focus of the inquiry is on the "consequences" of the districting scheme). In other words, a vote dilution claim is viable only if the districting scheme "has the ***effect*** of diminishing or abridging the voting strength of the protected class." *Voinovich v. Quilter*, 507 U.S. 146, 157 (1993) (emphasis added).

Vote denial claims, on the other hand, involve time, place or manner restrictions that affect individual voters' ability to exercise their right to vote. *See Brnovich*, 141 S. Ct. at 2334. For example, the bottom line of the United States' claim in this case is that SB 202 was enacted specifically to impose burdens and obstacles that restrict the ability of Black voters to vote. These claims are distinct from the vote dilution claims raised in *Desoto County* and similar cases. *See Greater Birmingham Ministries*, 992 F.3d at 1331 (stating that a vote denial claim is "a very different type of claim" from a vote dilution claim). As such, the Court does not interpret those cases to apply indiscriminately to vote denial cases or to require specific allegations of disparate results at the pleading stage in this case.

Moreover, State Defendants' expansive interpretation of *Desoto County* is questionable in light of the Supreme Court's recent express consideration of a discriminatory purpose claim in *Brnovich*. *See Brnovich*, 141 S. Ct. at 2348 (stating that the Supreme Court granted certiorari to review the plaintiffs' discriminatory purpose claim in addition to the discriminatory results claim). Presumably, the Supreme Court would have rejected the plaintiffs' discriminatory purpose claim if, as State Defendants contend, such a claim were invalid as a matter of law.

In short, whether the Court employs the *Arlington Heights* framework or the totality of the circumstances approach, the Complaint sufficiently pleads a VRA § 2 claim. Accordingly, the Court declines to dismiss Count I of the Complaint and **DENIES** Defendants' motions to dismiss (ECF Nos. 38, 39).

**SO ORDERED** this 9th day of December, 2021.

_____
J. P. BOULEE
United States District Judge